## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD A. ROSEN, on behalf of the Ferguson Enterprises, Inc. 401(k) Retirement Savings Plan and on behalf of all other similarly situated employee benefit plans,<br><br>                Plaintiff,<br><br>vs.<br><br>PRUDENTIAL RETIREMENT INSURANCE AND ANNUITY COMPANY, PRUDENTIAL BANK & TRUST, FSB, CAPFINANCIAL PARTNERS, LLC d/b/a CAPTRUST FINANCIAL ADVISORS, and FERGUSON ENTERPRISES, INC.,<br><br>                Defendants. | Case No. 3:15-cv-01839 (VAB)<br><br><br><br><br><br><br><br>June 13, 2016 |

## MEMORANDUM IN SUPPORT OF THE PRUDENTIAL DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

James T. Shearin (ct 01326)
PULLMAN & COMLEY
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601
Tel.: (203) 330-2240

Brian D. Boyle (*pro hac vice*)
Jeffrey W. Kilduff (*pro hac vice*)
Shannon M. Barrett (*pro hac vice*)
Meaghan VerGow (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Tel.: (202) 383-5300

*Attorneys for the Prudential Defendants*

ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

    A.    Plaintiff's Amended Complaint ..................................................................... 3

    B.    The Arrangements Made by Ferguson for Plaintiff's Former 401(k) Plan .......... 5

    C.    The Parties' Contractual Allocation of Responsibilities for the Plan's
    Investment Option Selections ........................................................................ 8

LEGAL STANDARDS ........................................................................................................ 9

ARGUMENT ........................................................................................................................ 11

I.    PRUDENTIAL IS ENTITLED TO DISMISSAL OF COUNT I BECAUSE IT
ACTED ONLY ON FERGUSON'S INSTRUCTIONS IN MAKING THE
PLAN'S INVESTMENT OPTIONS AVAILABLE TO PARTICIPANTS .................. 11

II.    COUNT II OF PLAINTIFF'S AMENDED COMPLAINT, FOR "CO-
FIDUCIARY" LIABILITY AND KNOWING PARTICIPATION IN A
BREACH OF TRUST, SIMILARLY FAILS TO STATE A CLAIM AGAINST
PRUDENTIAL ........................................................................................................ 22

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACE Secs. Corp. Home Equity Loan Trust v. DB Structured Prods., Inc.*,
  5 F. Supp. 3d 543 (S.D.N.Y. 2014).................................................................................10

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
  99 F. Supp. 3d 1110 (C.D. Cal. 2015) .............................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................9, 10, 13

*Borden v. Blue Cross & Blue Shield of W. New York*,
  418 F. Supp. 2d 266 (W.D.N.Y. 2006) ...........................................................................10

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*,
  771 F.3d 150 (2d Cir. 2014).............................................................................................24

*Cortec Indus. v. Sum Holdings L.P.*,
  949 F.2d 42 (2d Cir. 1991)...............................................................................................11

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010).............................................................................................10

*Donovan v. Cunningham*,
  716 F.2d 1455 (5th Cir. 1983) .........................................................................................23

*F.H. Krear & Co. v. Nineteen Named Trs.*,
  810 F.2d 1250 (2d Cir. 1987).....................................................................................12, 15

*Forgione v. Gaglio*,
  No. 13 Civ. 9061, 2015 WL 718270 (S.D.N.Y. Feb. 13, 2015) .....................................10

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002)..........................................................................................................24

*Haddock v. Nationwide Financial Services, Inc.*,
  419 F. Supp. 2d 156 (D. Conn. 2006)..............................................................................20

*Hannan v. Hartford Fin. Servs., Inc.*,
  No. 3:15-cv-0395, 2016 WL 1254195 (D. Conn. Mar. 29, 2016) ...........................16

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
  302 F.3d 18 (2d Cir. 2002)...........................................................................................16, 17

## TABLE OF AUTHORITIES
### (continued)

Page

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010)........................................................................10

*HealthCare Strategies, Inc. v. ING Life Insurance & Annuity Co.*,
    961 F. Supp. 2d 393 (D. Conn. 2013)......................................................20

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ...............................................................16, 17

*Jaclyn Santomenno v. Transamerica Life Ins. Co.*,
    No. 12-cv-02782, 2013 WL 603901 (C.D. Cal. Feb. 19, 2013) ..............18

*Denise Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co.
(U.S.A.)*,
    768 F.3d 284 (3d Cir. 2014)..............................................................16, 17

*Knight v. Standard Ins. Co.*,
    No. 07-1691, 2008 WL 343852 (E.D. Cal. Feb. 6, 2008)........................11

*Lee v. Burkhart*,
    991 F.2d 1004 (2d Cir. 1993)...................................................................23

*In re Lehman Bros. Sec. & ERISA Litig.*,
    No. 09 MD 2017, 2012 WL 6000575 (S.D.N.Y. Dec. 3, 2012) ........10, 14

*Leimkuehler v. Am. United Life Ins. Co.*,
    713 F.3d 905 (7th Cir. 2013) ...................................................................18

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
    811 F.3d 998 (8th Cir. 2016) .............................................................16, 17

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)..................................................................................22

*Palmason v. Weyerhaeuser Co.*,
    No. C 11-0695, 2013 WL 1788002 (W.D. Wash. Apr. 26, 2013)...........11

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)..................................................................................12

*Pension Fund-Mid Jersey Trucking Indus. Local 701 v. Omni Funding Grp.*,
    731 F. Supp. 161 (D.N.J. 1990) ...............................................................23

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011).......................................................... *passim*

**TABLE OF AUTHORITIES**
(continued)

Page

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007)........................................................................10

*Siskind v. Sperry Ret. Program, Unisys*,
    47 F.3d 498 (2d Cir. 1995)..........................................................................12

*Srein v. Frankford Trust Co.*,
    323 F.3d 214 (3d Cir. 2003)........................................................................22

*Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.*,
    712 F.3d 705 (2d Cir. 2013).........................................................................9

*TicketNetwork, Inc. v. Darbouze*,
    133 F. Supp. 3d 442 (D. Conn. 2015).........................................................11

*Tussey v. ABB, Inc.*,
    746 F.3d 327 (8th Cir. 2014) .....................................................................18

*Wright v. Or. Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) ...................................................................14

*Zang v. Paychex, Inc.*,
    728 F. Supp. 2d 261 (W.D.N.Y. 2010) .......................................................16

**Statutes**

26 U.S.C. § 401(k) .........................................................................................5

28 U.S.C. § 1292(b) ......................................................................................18

29 U.S.C. § 1002(34) ......................................................................................5

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)................................................12

ERISA § 3(21)(A)(ii), 29 U.S.C. § 1002(21)(A)(ii) .....................................12

ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) ........................................1, 5, 11

ERISA § 403(a)(1), 29 U.S.C. § 1103(a)(1) ...........................................6, 13

ERISA § 404(a), 29 U.S.C. § 1104(a) .................................................3, 4, 11

ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) ..................................................1

ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3) .........................................22, 23

ERISA § 406, 29 U.S.C. § 1106 ...................................................................11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

ERISA § 406(b), 29 U.S.C. § 1106(b) ....................................................................... 4

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) .............................................................. 24

**Other Authorities**

DOL, *Understanding Retirement Plan Fees and Expenses* ........................................ 19

**Rules**

Fed. R. Civ. P. 12(b) .................................................................................................. 10

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 4, 5

Defendants Prudential Retirement Insurance & Annuity Company ("PRIAC") and Prudential Bank & Trust, FSB ("Prudential Trust") (collectively, "Prudential") submit this memorandum in support of their motion to dismiss plaintiff's Amended Complaint for failure to state a claim under the Employee Retirement Income Security Act of 1974 ("ERISA").

## INTRODUCTION

This action seeks to challenge Prudential's right to be compensated for providing services to a 401(k) plan on terms Prudential negotiated at arm's length with plaintiff's former employer.  To question Prudential's right to be paid, plaintiff (a former participant in the plan) theorizes that Prudential effectively controlled the plan's choices of investment options, providing investment advice as to those choices and reserving the right to change them.  But plaintiff ascribes to Prudential fiduciary powers and responsibilities that Prudential never undertook—indeed, that plaintiff's former employer expressly directed Prudential *not* to undertake.  Plaintiff's action necessarily fails because his own pleading, together with the contracts with Prudential and other documents properly before the Court on this motion, establish that plaintiff's employer made those decisions itself with the aid of an investment adviser who was entirely independent of Prudential, and that Prudential had no discretion to change those decisions after the fact.

Under the Internal Revenue Code, employers can help their employees accumulate pre-tax savings for retirement by sponsoring a 401(k) plan, such as the Ferguson Enterprises, Inc., 401(k) Retirement Savings Plan (the "Ferguson Plan" or the "Plan") at issue here.  ERISA protects retirement plan participants by requiring the employer to appoint "one or more named fiduciaries," ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), and by charging those fiduciaries with the continuing duties to manage the plan's assets prudently, and to ensure the plan pays only reasonable fees for products and services, ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).  Named

1

fiduciaries typically turn to the market for the full range of services they need—including trust services, investment options, and recordkeeping services—and they sometimes enlist others to help make those decisions, as the Plan's named fiduciaries (collectively, "Ferguson") have done here in hiring CapFinancial Partners, LLC ("CapFinancial") as an investment adviser.  Here, Ferguson decided to choose Prudential, rather than one of Prudential's many competitors, to provide an investment platform for the Plan.  Under contracts negotiated with Ferguson, Prudential serves as the Plan's "directed trustee" and directed recordkeeper, promising to maintain custody of the Plan's assets, to invest them in the investment options Ferguson (allegedly advised by CapFinancial) selected for the Plan from among the many fund options available on the Prudential platform, and to keep the Plan's records as directed by Ferguson.  *See Renfro v. Unisys Corp.*, 671 F.3d 314, 323 (3d Cir. 2011) (a directed trustee who follows proper directions under ERISA "lacks discretion" to deviate from those directions and cannot be held liable for following them).

The choice of a directed trustee such as Prudential, and its platform of investment offerings, is solely for the Plan fiduciaries and their independent adviser to make.  Ferguson selected Prudential on terms it approved in advance.  Prudential's compensation, including "revenue sharing" from mutual funds within its menu, was fully disclosed and the result of an arm's-length negotiation as to which Prudential played no fiduciary role, and which Prudential had no discretionary power to change after the fact.  Far from being subject to Prudential's own control, that compensation was an express part of the terms on which the Plan's fiduciaries chose to engage Prudential, over options made available by Prudential's competitors.

Despite the opportunity to amend his original Complaint after substantial dialogue between counsel, plaintiff still makes the naked allegation that Prudential exercised control over

2

Ferguson's choices of investment options, including by giving investment advice and recommendations as Ferguson made its choices among Prudential's menu of investment options. Plaintiff offers no supporting factual detail for that proposition.   The relevant contracts plaintiff incorporates in the Amended Complaint establish that Prudential did not control Ferguson's selection of investment options from the Prudential menu of options, and that the Plan did not ask, and Prudential specifically did not undertake to provide, advice as to Ferguson's choices. Such clear division of responsibility between named Plan fiduciaries at Ferguson (as advised by CapFinancial) and the directed trustee they select (Prudential) is entirely ordinary and proper under ERISA, and furthers the purpose of protecting the employees and other retirement investors in the Plan.  In short, Prudential is not a fiduciary in any respect relevant to the conduct plaintiff challenges, and thus none of plaintiff's allegations suffice to make out a claim against Prudential under ERISA.  Plaintiff's Amended Complaint against Prudential should be dismissed with prejudice.

## BACKGROUND

### A.    Plaintiff's Amended Complaint

Plaintiff's Amended Complaint ("Am. Compl.") contends that the set of investment options in the Ferguson Plan are unreasonably costly—that the Plan fiduciaries should have chosen only low-cost "passive" or "index" options rather than higher-cost actively-managed options in which a portfolio manager attempts to outperform a broad market index.  Am. Compl. ¶¶ 102-06.  Count I of the Amended Complaint claims that Ferguson and CapFinancial (whom the Amended Complaint together dubs the "Ferguson Defendants," *id.* ¶¶ 28, 106), breached fiduciary duties to the Plan under ERISA § 404(a) when Ferguson selected those investment options with advice from CapFinancial.  *See* Am. Compl. ¶ 145; *id.* ¶ 26 (alleging that CapFinancial "provides investment advice to the Administrator of the Plan").   Count I likewise

contends that Prudential breached fiduciary duties by making available the investment options chosen by Ferguson because it provided investment recommendations to Ferguson, determined the broader menu of options it would carry on its platform, and had the power to change or substitute the Plan's investment choices.  *Id.* ¶¶ 23, 63-65, 78-79, 83, 93-94, 97, 116-17, 136-37.

The Amended Complaint also alleges that the mutual funds chosen for the Plan's set of investment options improperly shared revenue with Prudential.  *Id.* ¶¶ 3, 4, 23, 63, 117.  While the Amended Complaint makes the conclusory allegation that Prudential "fraudulently and deceptively concealed" these revenue sharing payments, *id.* ¶ 121, the investment "Fact Sheets" on which plaintiff relies in fact plainly disclose the payments' amounts.  *See* Declaration of Meaghan VerGow in Support of the Prudential Defendants' Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("VerGow Decl.") Ex. H.  Nevertheless, Count I asserts that Prudential breached fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a), and engaged in self-dealing prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), when it received revenue sharing from the Plan's mutual fund investments.  Am. Compl. ¶¶ 135-49.

Count II of the Amended Complaint summarily asserts a claim against all defendants for co-fiduciary liability or, in the alternative, for "knowing breach of trust" based on the same constellation of allegations that are intended to support Count I.  *Id.* ¶¶ 150-51.[1]

---

[1] This action was commenced in December 2015.  Following Prudential's waiver of service, counsel for the parties engaged in discussions regarding the factual underpinnings of plaintiff's Complaint.  As set out for the Court in the agreed motion of February 10, 2016 for an extension of the time to respond to the original Complaint, Prudential subsequently made available to plaintiff for his review and analysis certain documents describing Prudential's contractual relationship with the Plan because Prudential believed that the documents and additional discussions between counsel could facilitate a voluntary dismissal or other early resolution of the case, or at least a narrowing of plaintiff's allegations.  Plaintiff chose to proceed with the Amended Complaint on somewhat differently stated claims but, as will be explained,

**B.     The Arrangements Made by Ferguson for Plaintiff's Former 401(k) Plan**

Plaintiff Richard A. Rosen is a former participant in the Ferguson Plan,[2] an employer-sponsored, participant-directed 401(k) plan established by Ferguson to help its employees save for retirement.  Am. Compl. ¶¶ 1, 21, 107; 29 U.S.C. § 1002(34); 26 U.S.C. § 401(k); *see also, e.g.*, VerGow Decl. Ex. E (Ferguson Plan Form 5500 (2014)), at 1.[3]  Participants in 401(k) plans like the Ferguson Plan make contributions to individual accounts, and then allocate their accounts across investment options that carry different risk and return profiles.  Am. Compl. ¶¶ 51, 108.

As noted, ERISA requires Ferguson as the employer-sponsor of the Plan, to appoint one or more "named fiduciaries" to make decisions for its Plan, and to obtain any necessary products and services in the marketplace.  *See* ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) (requiring sponsor to appoint "named fiduciaries").  In this case, Ferguson appointed a committee of Ferguson employees to exercise the fiduciary obligations of the employer-sponsor.  Am. Compl. ¶ 27.  Acting on behalf of the Plan, these fiduciaries chose Prudential over Prudential's many competitors to meet the Plan's investment product and service needs.  The Plan fiduciaries selected a set of investment options to make available to Plan participants for investment.  The Plan fiduciaries selected those options from among those offered by Prudential and directed Prudential to provide related recordkeeping services.   The contract arrangements included a trust

---

those claims nevertheless suffer from essentially all of the same fundamental legal deficiencies of the original Complaint.

[2] By agreement of plaintiffs and Prudential, an action filed against Prudential by another plaintiff, Randall Muir (*Muir v. Prudential Retirement Insurance & Annuity Co.*, No. 16-cv-0319 (VAB)) has been consolidated with this action.  ECF No. 46.  While that consolidation order relieves Prudential of responding to the *Muir* complaint, the dismissal arguments that Prudential makes in this memorandum apply equally to the *Muir* claims.

[3] As explained *infra* at 10-11 & nn.7-8, the Court may consider judicially noticeable materials and materials incorporated into the Amended Complaint in considering a dismissal motion under Federal Rule of Civil Procedure 12(b)(6).

agreement (the "Trust Agreement," attached as VerGow Decl. Ex. A), which made available to Plan participants the investment options that the Plan fiduciaries had selected, an administrative services agreement (the "Services Agreement," attached as VerGow Decl. Ex. D) governing Prudential's recordkeeping services, and a GoalMaker agreement, which directs PRIAC to administer an educational program for participants ("GoalMaker") that makes available to participants a model portfolio and permits participants to choose to invest in the portfolio with auto-rebalancing and age adjustment features over time (the "GoalMaker Contract," attached as VerGow Decl. Ex. B).[4]  There is no factual allegation in the Amended Complaint to contest that the Ferguson-appointed fiduciaries negotiated both the Trust Agreement and the Services Agreement with Prudential entirely at arms' length, in the ordinary course of business.

The Trust Agreement establishes a trust of Ferguson Plan assets and appoints Prudential Trust as the Plan's directed trustee.  Trust Agreement § 1.[5]  The Trust Agreement provides that Prudential Trust "shall receive, hold, manage, invest and reinvest the Trust Fund . . . in accordance with the directions of the Employer," and directs that Prudential Trust "shall take no action except pursuant to directions received by it from the Employer."  *Id.* § 3.  In particular,

---

[4] Other than the group annuity contract (the "GAC," attached as VerGow Decl. Ex. C), which is filed with governing regulatory authorities, the remaining Plan contracts are confidential.  These documents reflect Prudential forms that Prudential generally shares only during non-public negotiations with plans.  As finalized, these agreements reflect the substance of non-public negotiations between the Ferguson Plan and Prudential that should not be shared with competitors or other prospective clients.  Pursuant to the Court's protective order (ECF No. 3), Prudential voluntarily produced the Trust Agreement to plaintiff as confidential Designated Material and, with this motion, Prudential provides the Services Agreement and GoalMaker Contract under a similar claim of confidentiality.  Accordingly, in accordance with Paragraph 14 of the Court's protective order, Prudential has moved for leave to file these documents under seal.

[5] *See* ERISA § 403(a)(1), 29 U.S.C. § 1103(a)(1) (a directed trustee is "subject to the direction of a named fiduciary who is not a trustee," and "shall be subject to proper directions of such fiduciary").

Prudential Trust must "invest the assets of the Trust Fund in such investment vehicles as directed by the Employer, . . . in accordance with directions received from the Employer." *Id.* § 4(b).

The Trust Agreement explicitly provides that Prudential Trust "shall have no duty or responsibility to determine the appropriateness of any plan investment, or to cause such investments to be changed." *Id.* This term of the Trust Agreement expressly contradicts the theory and essence of plaintiff's Amended Complaint. Plaintiff alleges no specific conduct, act, or transaction to suggest that Prudential undertook duties or responsibilities to provide advice concerning the Plan's investment options, or to change those options, in violation of this term of the Trust Agreement. Indeed, to the contrary, the Amended Complaint alleges that Ferguson engaged an entity independent of Prudential, CapFinancial, to provide advice about the Plan's choices of investments. Am. Compl. ¶¶ 26-27.

During the putative class period, Ferguson's investment option choices included a number of mutual funds, and Prudential followed Ferguson's direction in making those funds available directly to the Plan and its participants. Ferguson also directed Prudential Trust to enter into a group annuity contract on the Plan's behalf with PRIAC (the "GAC," attached as VerGow Decl. Ex. C). *See* Trust Agreement § 4(b). That contract gave Ferguson access to certain insurance products for the Plan's set of investment options, including a guaranteed income product known as a stable value fund, as well as a number of pooled separate accounts. GAC § 2.1, Separate Account E & F Riders; Am. Compl. ¶ 9. In turn, Ferguson directed Prudential to offer participants the stable value fund and certain specific separate accounts. *See* VerGow Decl. Ex. E (Ferguson Plan Form 5500 (2014), at PRU-ROSEN 0000088, 94; Ferguson Plan Form 5500 (2013), at PRU-ROSEN 0000160, 165; Ferguson Plan Form 5500 (2012), at PRU-ROSEN 0000236-237, 242; Ferguson Plan Form 5500 (2011), at PRU-ROSEN 0000297-

298, 303; Ferguson Plan Form 5500 (2010), at PRU-ROSEN 0000342-343, 348; Ferguson Plan

Form 5500 (2009), at PRU-ROSEN 0000390, 396); *see also* VerGow Decl. Ex. G.  The separate

accounts that Ferguson selected did not invest in any mutual funds during the putative class

period, but rather invested directly in individual securities.  VerGow Decl. Ex. E (Ferguson Plan

Form 5500 (2014), at PRU-ROSEN 0000065; Ferguson Plan Form 5500 (2013), at PRU-

ROSEN 0000124; Ferguson Plan Form 5500 (2012), at PRU-ROSEN 0000199; Ferguson Plan

Form 5500 (2011), at PRU-ROSEN 0000277; Ferguson Plan Form 5500 (2010), at PRU-

ROSEN 0000322; Ferguson Plan Form 5500 (2009), at PRU-ROSEN 0000368-369); VerGow

Decl. Ex. F (DFEs, Form 5500 filings (2009-2014), at pages referenced in VerGow Decl. ¶ 9).

The Trust Agreement reflects that Prudential "will provide recordkeeping services for all

Plan assets held pursuant to th[e] Trust Agreement."  Trust Agreement § 9; *see* Am. Compl.

¶ 112.  The Services Agreement details what those services are.  Services Agreement §§ 2, 6.  At

Ferguson's direction,  Prudential is compensated for all its services to the Ferguson Plan—

custodial, administrative, and investment management—pursuant to an expense schedule.  *See*

GAC § 3.1(G); Trust Agreement §§ 7, 8; Services Agreement § 6.  Prudential's compensation

includes revenue sharing from some of the mutual funds in which the Plan invests.  Am. Compl.

¶ 3.[6]

### C.   The Parties' Contractual Allocation of Responsibilities for the Plan's Investment Option Selections

The Trust Agreement provisions just summarized make clear that Ferguson, not

Prudential, had exclusive control over the selection of investment options for the Plan.  Under

the Trust Agreement, Prudential is simply the Plan's directed trustee—Prudential has authority

---

[6] Prudential Trust and PRIAC assumed the agreements discussed in the text from CIGNA after acquiring CIGNA's retirement business in 2004.  *See* Trust Agreement at PRU-ROSEN 0000005-6; Services Agreement at 48-49; GAC at 7-8.

only to make available investment options upon Ferguson's express instructions.  *See, e.g.*, Trust Agreement § 3(a) ("The Trustee shall take no action except pursuant to directions received by it from the Employer . . . .").  Moreover, the Trust Agreement expressly ***disavows*** that Prudential has any duty or responsibility to advise on the appropriateness of the investments ultimately selected.  *See, e.g.*, *id.* § 4(b) ("The Trustee shall have no duty or responsibility to determine the appropriateness of any plan investment . . . ."); *id.* § 3(c) ("[N]o further duties or obligations of the Trustee, such as a duty to value Plan investments, determine the prudence of any Plan investment, or diversify Plan investments, shall be implied.").

Plaintiff effectively concedes this allocation of responsibility when he alleges at length that Ferguson was responsible for selecting the Plan's investment options, and that it was Ferguson (and its adviser, CapFinancial) who had a duty to ensure that the Plan's investment costs were reasonable.  Am. Compl. ¶¶ 102, 145.  The Amended Complaint alleges in conclusory terms that Prudential had the power to change the mutual fund selections in the Ferguson Plan, *id.* ¶¶ 23, 64, 79, 83, 93-94, 116-17, 137, but that allegation contradicts the Trust Agreement, and plaintiff offers no other factual basis to support his naked assertion, *id.* ¶¶ 63-64.

## LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim as a matter of law, a plaintiff cannot rest on unadorned legal conclusions but rather must offer factual allegations that permit the plausible inference of liability.  *Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 717 (2d Cir. 2013).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  In the end, a claim is not facially plausible unless "the

9

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In considering a motion to dismiss, the Court properly begins by discarding those allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). In addition, while as a general matter the Court must accept well-pleaded factual allegations as true, if a "document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control[s], and the court need not accept the allegations in the complaint as true." *ACE Secs. Corp. Home Equity Loan Trust v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014) (quotation omitted); *see Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (district court may consider incorporated materials under Federal Rule of Civil Procedure 12(b) without treating motion as seeking summary judgment).[7] Similarly, the Court may consider materials that are judicially noticeable without having to convert a dismissal motion to a motion for summary judgment. Such judicially noticeable materials include the Plan's annual Form 5500 filings with the Department of Labor ("DOL"), as well as the Form 5500 submissions of the Plan's pooled investment options. *See, e.g.*, *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1125 (C.D. Cal. 2015) (taking judicial notice of

---

[7] *See Borden v. Blue Cross & Blue Shield of W. New York*, 418 F. Supp. 2d 266, 273 (W.D.N.Y. 2006) (considering ERISA plan document in ruling on motion to dismiss); *Forgione v. Gaglio*, No. 13 Civ. 9061, 2015 WL 718270, at *17 (S.D.N.Y. Feb. 13, 2015) (considering ERISA "Plan document and adoption agreement" on motion to dismiss as "undoubtedly integral to the Complaint"); *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017, 2012 WL 6000575, at *1 n.2 (S.D.N.Y. Dec. 3, 2012) (on motion to dismiss, considering plan document and Trust, Recordkeeping and Administrative Services Agreement that were incorporated by reference); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (even "[w]here a document is not incorporated by reference, the court may . . . consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint" (quotations omitted)).

Form 5500 on a motion to dismiss); *Knight v. Standard Ins. Co.*, No. 07-1691, 2008 WL 343852, at *2 (E.D. Cal. Feb. 6, 2008) (same); *Palmason v. Weyerhaeuser Co.*, No. C 11-0695, 2013 WL 1788002, at *1 (W.D. Wash. Apr. 26, 2013) (same).[8]

## ARGUMENT

## I.   PRUDENTIAL IS ENTITLED TO DISMISSAL OF COUNT I BECAUSE IT ACTED ONLY ON FERGUSON'S INSTRUCTIONS IN MAKING THE PLAN'S INVESTMENT OPTIONS AVAILABLE TO PARTICIPANTS

Plaintiff's core claim in Count I is that Prudential breached fiduciary duties by exercising control over the Plan's investment choices, allegedly causing the Plan to include high-cost investments as well as investments that paid Prudential excessive compensation.  Am. Compl. ¶¶ 135-44.  But plaintiff does not plausibly allege that Prudential had any fiduciary authority at all over the Plan's choice of investment options, and thus Count I fails against Prudential in its entirety.

ERISA requires an employer who establishes an ERISA-governed retirement plan to appoint "named fiduciaries" to look after the plan, ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), and the statute requires those fiduciaries to act prudently and loyally to the plan, to act exclusively for the benefit of the plan and its participants, and to cause the plan to bear only "reasonable" expenses, *see generally* ERISA § 404(a), 29 U.S.C. § 1104(a); *see also* ERISA § 406, 29 U.S.C. § 1106 (barring fiduciaries from undertaking "prohibited" transactions with respect to a plan).   The named fiduciaries may engage other parties to assist the plan, but ERISA provides that those parties take on fiduciary duties only insofar as they are delegated or perform certain fiduciary functions.  Thus, "a person is a fiduciary with respect to a plan ***to the extent***":

---

[8] *See also Cortec Indus. v. Sum Holdings L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (taking judicial notice of "public disclosure documents required by law to be and which actually have been filed with the SEC"); *TicketNetwork, Inc. v. Darbouze*, 133 F. Supp. 3d 442, 449 (D. Conn. 2015) (collecting cases and noting that a court "may take judicial notice of matters of public record, including documents filed with public bodies, such as articles of incorporation").

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (emphasis added).  Because fiduciary duties under ERISA attach to specific functions, a party who is a fiduciary as to **one** function is not necessarily a fiduciary with respect to **other** functions.  *See F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987) ("[A] person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only 'to the extent' that he has or exercises the described authority or responsibility."); *Siskind v. Sperry Ret. Program, Unisys*, 47 F.3d 498, 505 (2d Cir. 1995) (fiduciary duties apply "only when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration").  Thus, as the Supreme Court has instructed, "[i]n every case charging breach of ERISA fiduciary duty, . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  Here, there is no dispute that Prudential was not a "named fiduciary," so plaintiff tries to ascribe to Prudential some sort of functional fiduciary status with respect to Ferguson's choices of investment options.  But all of his efforts are to no avail.

Plaintiff primarily speculates that Ferguson made its investment option choices only after Prudential made specific recommendations as a paid "investment adviser."  *See* Am. Compl. ¶¶ 136-37.  It is true that paid "investment advisers" can be ERISA fiduciaries in certain circumstances.  *See generally* ERISA § 3(21)(A)(ii), 29 U.S.C. § 1002(21)(A)(ii) (party has fiduciary responsibility to the extent "he renders investment advice for a fee or other

12

compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so").  But that is irrelevant here because plaintiff's "naked assertion" that Ferguson sought Prudential out for this role must be disregarded under ordinary pleading standards.  *See Iqbal*, 556 U.S. at 678 ("naked assertion[s] devoid of further factual enhancement" need not be credited (quotations omitted)).  For one thing, the allegation is negated by the Amended Complaint, which alleges that Ferguson had an ***actual*** financial adviser, CapFinancial, who guided the Plan in making decisions about which investment options to include in the Plan.  Am. Compl. ¶¶ 28, 106, 145.  For another, the Trust Agreement on which the Amended Complaint relies to establish the terms of Prudential's retention states flatly that Prudential will not, under any circumstances, provide advice concerning the Plan's investment option choices.  Trust Agreement § 3(c) ("The duties and obligations of the Trustee hereunder shall be limited to those expressly imposed upon it by this Trust Agreement," and "no further duties or obligations of the Trustee, such as a duty to value Plan investments, determine the prudence of any Plan investment, or diversify Plan investments, shall be implied."); *id.* § 4(b) ("The Trustee shall have no duty or responsibility to determine the appropriateness of any plan investment . . . .").

Rather than serving as an investment adviser with respect to Ferguson's selection of the investment options plaintiff challenges, the contracts incorporated in the Amended Complaint make clear that Prudential served only as a ***directed*** trustee as to those choices.  *See supra* at 6-7, 8-9.  ERISA provides that directed trustees are "subject to proper directions" from the plan fiduciary who retains them (here, Ferguson).  ERISA § 403(a)(1), 29 U.S.C. § 1103(a)(1).  A directed trustee who follows the directions of the named fiduciary as to choices of investment options is "essentially immune from judicial inquiry" in that role because "it lacks discretion,

13

taking instructions from the plan that it is required to follow." *Renfro*, 671 F.3d at 323 (quotation omitted). As a district court in this circuit aptly put it, "the fiduciary duties of a directed trustee are extremely narrow." *In re Lehman Bros.*, 2012 WL 6000575, at *2 (quotation omitted). Directed trustees have "no duty to duplicate or second-guess the work of the plan fiduciaries that have discretionary authority over the management of plan assets," *id.* (quotation omitted), and they bear no fiduciary responsibility over investment selections when they carry out the investment directions of others which do not themselves violate ERISA. *See id.*; *see also, e.g.*, *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1102 (9th Cir. 2004).

Plaintiff tries to imply that Prudential has exercised more than "directed trustee" powers over the Plan's selection of the mutual fund investment options in the Plan by placing those investments in various "individual" or "collective" trusts that are available as Plan investment options, and reserving for itself the power to change those investments. *E.g.*, Am. Compl. ¶¶ 46, 70-73. But the Trust Agreement directly contradicts these unsupported allegations. The Trust Agreement shows that Prudential held the Plan's mutual fund shares in a single trust for the Plan and that Prudential makes changes in those mutual fund investment options only at the direction of Ferguson. Trust Agreement §§ 1, 3, 4(b). Plaintiff also tries to pin fiduciary responsibility on Prudential for Ferguson's selection of investment options on the ground that Prudential serves as an investment manager for some of the options Ferguson selected. But by its express allegations, the Amended Complaint makes clear that this action does not put that investment management activity at issue. *E.g.*, Am. Compl. ¶ 9 ("No claims are asserted in this action with respect to the Stable Value Fund or the Synthetic GIC."). Rather, this action seeks to challenge Ferguson's selection of Prudential as a directed trustee, the ***costs*** of the investment options that Ferguson chose for the Plan, and the compensation that Prudential receives as a result of those choices.

14

Those claims fail as a matter of law as to Prudential because the Plan's selection of Prudential, the costs of the investment options selected by the Plan, and Prudential's compensation were determined and agreed to by Ferguson, and the relevant contracts make clear that Ferguson controlled those choices without any advice or recommendations from Prudential.

Lacking any basis in the contracts for alleging that Prudential was anything but a directed trustee with respect to Ferguson's choice of investment options, and nowhere alleging that Prudential failed to follow Ferguson's instructions, plaintiff tries to allege that Prudential took on fiduciary duties even before Ferguson decided to retain it by determining what products it would offer in the market.   On plaintiff's theory, Prudential supposedly has the power to determine the large "menu" of options it carries on its platform, and the prices at which it will offer them to potential clients.  Am. Compl. ¶¶ 64, 79.  Yet the cases are clear in the Second Circuit, as elsewhere, that a service provider does not act as a fiduciary in negotiating with an independent plan fiduciary over the terms on which it will be retained.  As the Second Circuit explained in *F.H. Krear*, "[w]hen a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he has no authority over or responsibility to the plan and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement with him."  810 F.2d at 1259.  A corollary to this principle is that once a plan fiduciary decides to retain a service provider and comes to an agreement with the provider on terms of compensation, the service provider does not itself act in a fiduciary capacity when it enforces the agreement to its benefit—for example, by collecting agreed-upon compensation for its products and services.  As the Second Circuit has aptly put it, "where parties negotiate the terms of a contract governing a retirement plan, the adherence to those terms by [the provider] cannot constitute a breach of its fiduciary duties, barring a grant of discretionary authority to the

15

[provider]." *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 29 (2d Cir. 2002); *accord Hannan v. Hartford Fin. Servs., Inc.*, No. 3:15-cv-0395, 2016 WL 1254195, at *3 (D. Conn. Mar. 29, 2016) (where agreement is "'bargained for at arm's length, adherence to th[e] [agreement] is not a breach of fiduciary duty,'" and no discretion is exercised when the service provider "'merely adheres to a specific contract term'" (quoting *Harris Trust*, 302 F.3d at 29)).

Courts within and outside this Circuit have applied these principles to reject investment fee claims materially identical to plaintiff's here.  For instance, in *Zang v. Paychex, Inc.*, a New York federal district court dismissed claims that a 401(k) provider breached fiduciary duties by collecting agreed-upon compensation from plan investments where it restricted the plan's choice of investment options to those carried on its platform.  728 F. Supp. 2d 261 (W.D.N.Y. 2010). There, the provider offered only a limited range of potential investment choices (in contrast to the broad range available on Prudential's platform here), but the district court nevertheless held as a matter of law that the provider, Paychex, was not a fiduciary with respect to the plan's choices since, "[u]ltimately, it remained up to [the plan sponsor] to decide which funds to invest in." *Id.* at 271.  Taking the same approach, the Third, Seventh, and Eighth Circuits, too, have all affirmed dismissal of complaints against service providers like Prudential for offering investment choices to 401(k) plans and negotiating the terms of their retention with independent plan fiduciaries.  *Denise Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284 (3d Cir. 2014), *cert. denied sub nom. Santomenno v. John Hancock Life Ins. Co.*, 135 S. Ct. 1860 (2015); *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009); *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998 (8th Cir. 2016), *reh'g and reh'g en banc denied* (Feb. 17, 2016).

In the most recent of these, *McCaffree*, a plan sponsor brought an action on behalf of its participating employees against the service provider that the sponsor had engaged to provide the plan's investment options.  811 F.3d at 1000.  The sponsor asserted that the provider's fees were excessive and therefore in breach of the service provider's "fiduciary" duties.  The Eighth Circuit held that the provider owed no fiduciary duty in connection with the negotiation of its compensation and that any other conduct over which the service provider allegedly had discretion had no connection to the excessive fee allegations.  Echoing the Second Circuit's holding in *Harris Trust*, the court reiterated that "a service provider's adherence to its agreement with a plan administrator does not implicate any fiduciary duty where the parties negotiated and agreed to the terms of that agreement in an arm's-length bargaining process."  *Id.* at 1003 (citations omitted).  The Eighth Circuit explained, "[u]p until it signed the agreement with Principal [the service provider], McCaffree [the plan sponsor] remained free to reject its terms and contract with an alternative service provider offering more attractive pricing or superior investment products."  *Id.*  "Principal did not owe plan participants a fiduciary duty while negotiating the fee terms with McCaffree," and "Principal could not have breached any such duty merely by charging the fees described in the contract that resulted from that bargaining process."  *Id.*[9]

---

[9] *See also Denise Santomenno*, 768 F.3d at 293 ("[W]hen a service provider and a plan trustee negotiate at arm's length over the terms of their agreement, discretionary control over plan management lies not with the service provider but with the trustee, who decides whether to agree to the service provider's terms."); *Renfro*, 671 F.3d at 324 ("Plaintiffs allege Unisys selected investment options with excessive fees caused by a fee structure negotiated between Unisys and Fidelity for included mutual funds," but "Fidelity owes no fiduciary duty with respect to the negotiation of its fee compensation by Unisys."); *Hecker*, 556 F.3d at 583 ("[A] service provider does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms.").  One district court has suggested, contrary to the uniform view of other courts, that to distinguish the negotiation of a service provider agreement from the performance of that agreement would be

Plaintiff tries to escape these principles by alleging the legal conclusion that Prudential "fraudulently and deceptively concealed" its revenue sharing payments from mutual funds Ferguson chose for the Plan.  In fact, that naked allegation is directly contradicted by the "Fact Sheets" for the Plan's mutual fund investment options that are incorporated in the Amended Complaint.  Am. Compl. ¶ 121; *see* VerGow Decl. Ex. H.  Those Fact Sheets explicitly detail the amounts of revenue sharing compensation that Prudential receives from each fund selection. Because Ferguson had exclusive control over the Plan's mutual fund choices, and Prudential acted under the Trust Agreement only at Ferguson's direction, Prudential has no fiduciary responsibility under ERISA for any revenue sharing compensation that resulted from that direction, all of which was fully disclosed on the Fact Sheets to which the Amended Complaint itself refers.  Ferguson was plainly entitled to use that revenue sharing to compensate Prudential for its services, and Prudential is entitled to retain that compensation.  *See, e.g.*, *Tussey v. ABB, Inc.*, 746 F.3d 327, 331, 336 (8th Cir. 2014) (mutual fund revenue sharing is a "common and acceptable investment industry practice[ ] that frequently inure[s] to the benefit of ERISA plans"); *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 908-09 (7th Cir. 2013) (explaining that revenue sharing involves mutual fund companies "pay[ing] a portion of the fees they charge investors" to an insurance company "to cover the costs of [its] providing the

---

"formalistic line-drawing."  *Jaclyn Santomenno v. Transamerica Life Ins. Co.*, No. 12-cv-02782, 2013 WL 603901, at *6 (C.D. Cal. Feb. 19, 2013).  But this view has never been sustained on appeal and, as it contradicts the basic principles under ERISA by which providers engage in the competitive negotiation of services for plans, should be rejected here as manifestly erroneous. Recognizing that there are, at the very least, substantial grounds for the contrary position on this point, the district court has since certified its decision for an interlocutory appeal under 28 U.S.C. § 1292(b).  *See* Order, *Jaclyn Santomenno v. Transamerica Life Ins. Co.*, No. 2:12-cv-02782 (C.D. Cal. May 13, 2016), ECF No. 411.

participant-level services that the mutual fund [otherwise] would be furnishing," and noting that the practice has been "commonplace for years").[10]

Finally, plaintiff suggests that even if Ferguson selected the Plan's investment options, some of Ferguson's choices were pooled separate accounts for which Prudential served as investment manager—and that Prudential used its discretion as investment manager to invest the separate accounts in mutual funds that, in turn, paid revenue sharing.  The judicially-noticeable Form 5500 submissions by the Plan and its separate accounts to the DOL demonstrate the contrary.  The Form 5500s, which list all of the investments of the pooled separate accounts chosen by Ferguson, do not include any mutual funds at all during the putative class period. VerGow Decl. Ex. E (Ferguson Plan Form 5500 (2014), at PRU-ROSEN 0000065; Ferguson Plan Form 5500 (2013), at PRU-ROSEN 0000124; Ferguson Plan Form 5500 (2012), at PRU-ROSEN 0000199; Ferguson Plan Form 5500 (2011), at PRU-ROSEN 0000277; Ferguson Plan Form 5500 (2010), at PRU-ROSEN 0000322; Ferguson Plan Form 5500 (2009), at PRU-ROSEN 0000368-369); VerGow Decl. Ex. F (DFEs, Form 5500 filings (2009-2014), at pages referenced at VerGow Decl. ¶ 9).  The "Fact Sheets" associated with those separate accounts—which plaintiff incorporates into his pleading, Am. Compl. ¶ 121—show the same.  *See* VerGow Decl. Ex. G.  The separate account options chosen by Ferguson instead invest directly and exclusively in individual securities; no mutual funds are involved, whether they share revenues or not.

---

[10] Department of Labor publications identify revenue sharing as a common, legitimate means by which plans compensate their service providers for services.  *See, e.g.*, DOL, *Understanding Retirement Plan Fees and Expenses* (last visited June 11, 2016), *available at* www.dol.gov/ebsa/publications/undrstndgrtrmnt.html ("In some instances, the costs of administrative services will be covered by investment fees that are deducted directly from investment returns.").

The absence of any power under the Trust Agreement for Prudential to change or substitute the investment options chosen by Ferguson, including the Plan's mutual fund investment options, distinguishes this case from others in which the service provider obtained effective control over the plan's selection of options by reserving the contractual power to change or substitute those options. Thus, in *Haddock v. Nationwide Financial Services, Inc.*, a district court held that a service provider had fiduciary responsibility to account for revenue sharing paid by mutual fund companies when it reserved the power unilaterally to change the mutual funds in which its pooled separate accounts invested, or to substitute pooled separate account investments that its plan clients selected for others that invest in different mutual funds with potentially higher revenue-sharing payments. 419 F. Supp. 2d 156, 161, 165-66 (D. Conn. 2006). The district court's decision in *HealthCare Strategies, Inc. v. ING Life Insurance & Annuity Co.* is to the same effect. *See* 961 F. Supp. 2d 393 (D. Conn. 2013) (Young, J., sitting by designation). There, the court concluded that a service provider could have fiduciary responsibility for revenue sharing received from mutual funds on account of contractual "authority to change, add, or eliminate the funds that may be invested by 401(k) plan participants." *Id.* at 399-401. As explained, *see supra* at 6-7, 14, the contract documents here establish that Prudential neither had nor exercised any such power in its relationship with the Ferguson Plan, and that plaintiff's naked allegation to the contrary therefore cannot be credited.

Employers like Ferguson have a broad range of choices in the market, and nothing compels a plan to choose Prudential's service offerings over those of Prudential's many competitors. Because Ferguson had continuing, unfettered control over whether to opt for (and stay with) Prudential's service package, or to turn to competitors offering a different range of investment products and fee arrangements, Prudential had no fiduciary responsibility for

Ferguson's choices.  Prudential did not become a fiduciary merely by enforcing its contractual right to be paid the fees that Ferguson approved in connection with its choice of Plan investment options.[11]

* * *

Plaintiff's prolix Amended Complaint includes a litany of other allegations to suggest that Prudential has taken on fiduciary responsibilities unrelated to the selection of investment funds for the Ferguson Plan.  But those allegations describe limited fiduciary roles (maintaining custody of the Plan's assets, for example) that seemingly have nothing to do with the balance of the Amended Complaint and, in any event, cannot sustain any ERISA claims against Prudential over Ferguson's choices of investment options for the Plan.  Ferguson had exclusive control of the complained-of choices of investment options, and was at all times free to change its selections or switch the Plan to another service provider's platform entirely.  Prudential, as directed trustee, acted solely at Ferguson's direction; Ferguson had all of the relevant fiduciary responsibility.  Plaintiff's decision to name Ferguson and its investment adviser, CapFinancial, as defendants in the Amended Complaint tacitly confirms this fatal defect in his claims against Prudential.  Count I should thus be dismissed against Prudential.

---

[11] In his Amended Complaint, plaintiff newly raises the cursory contention that Prudential administered an educational program for participants ("GoalMaker") in order to drive them toward the funds that earned Prudential the greatest revenue sharing or other profits.  Am. Compl. ¶¶ 96, 101, 106; *see* GoalMaker Portfolio Line Up Contract ("GoalMaker Contract," attached as VerGow Decl. Ex. B), at 1.  Here again, however, it was Ferguson that was in control—Ferguson, not Prudential, selected the subset of funds in the Plan's GoalMaker portfolio from among the larger set of funds that Ferguson selected for the Plan, and compensation Prudential would earn from those funds was disclosed in the Fact Sheets.  GoalMaker Contract at 1.  Any revenue sharing or other compensation that Prudential could earn as a result of participants' use of the model portfolios was thus directed by Ferguson, not by Prudential.

II.   **COUNT II OF PLAINTIFF'S AMENDED COMPLAINT, FOR "CO-FIDUCIARY" LIABILITY AND KNOWING PARTICIPATION IN A BREACH OF TRUST, SIMILARLY FAILS TO STATE A CLAIM AGAINST PRUDENTIAL**

In Count II of the Amended Complaint, plaintiff suggests that Prudential has "co-fiduciary" responsibility for the Ferguson Defendants' alleged fiduciary breaches, and that even as a non-fiduciary Prudential "knowingly participated in a breach of trust" and thus is liable for "all recoverable damages and relief."  Am. Compl. ¶ 151.  Neither of these attempted end-runs around ERISA's clear delineation of fiduciary responsibilities allows plaintiff to pursue claims against Prudential for Ferguson's investment choices.

Plaintiff first suggests that Prudential can be held liable as a "co-fiduciary" under ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), for failing to remedy Ferguson's alleged breaches in choosing expensive funds for the Plan's set of investment options.  As the Ferguson Defendants have developed in their separate motion, it is not a breach of fiduciary duty for a plan to offer participants actively-managed investment options, which can be more expensive than passive options.

Moreover, even if plaintiff's fiduciary breach claim against the Ferguson Defendants had substance (it does not), plaintiff would still have no basis on a co-fiduciary theory to extend liability to Prudential.  Section 405(a)(3) permits co-fiduciary liability *only* against a party that had fiduciary responsibility as to the relevant activity in the first place.  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (expanding fiduciary liability "would impose high insurance costs upon persons who regularly deal with and offer advice to ERISA plans, and hence upon ERISA plans themselves"); *Srein v. Frankford Trust Co.*, 323 F.3d 214, 221 (3d Cir. 2003) (fiduciary status under ERISA "is not an all or nothing concept").   Prudential has no such responsibilities here.  Without this limiting rule, a party retained by an employer to perform any

22

fiduciary role, however limited, would effectively "become an insurer of the entire plan," *Pension Fund-Mid Jersey Trucking Indus. Local 701 v. Omni Funding Grp.*, 731 F. Supp. 161, 176 (D.N.J. 1990), having to investigate and second-guess the primary fiduciaries' judgments every step of the way in order to avoid co-fiduciary liability.  The result would be substantially increased costs for plans and their participants.

Plaintiff also nowhere alleges, as he must for a co-fiduciary breach claim, that Prudential had the requisite knowledge of Ferguson's alleged fiduciary breaches.  *See* ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3) (no co-fiduciary liability unless fiduciary "has knowledge of a breach by such other fiduciary").  In a similar case against a directed trustee, the Third Circuit Court of Appeals affirmed dismissal of co-fiduciary claims because the plaintiff's complaint failed to allege that the directed trustee was aware of the plan fiduciary's investment selection process. *Renfro*, 671 F.3d at 324 ("Even assuming Fidelity's subsequent assumption of the role of directed trustee could subject it to co-fiduciary liability for a breach by Unisys relating to the mix and range of investment options in the plan, including risk and fee profiles, . . . Plaintiffs' claims fail because they do not contend Fidelity had knowledge about Unisys's allegedly flawed decision-making process regarding investment options to be included in the plan.").  The same result should apply here.  *See also Lee v. Burkhart*, 991 F.2d 1004, 1010-11 (2d Cir. 1993) (plaintiffs failed to state claim for co-fiduciary liability under ERISA § 405(a)(3) where they did not allege that purported co-fiduciary knew about fiduciary's alleged breach); *Donovan v. Cunningham*, 716 F.2d 1455, 1475 (5th Cir. 1983) ("Section 405 does not impose vicarious liability—it requires actual knowledge by the co-fiduciary.").

Finally, plaintiff claims that even if Prudential did not have any fiduciary responsibility for Ferguson's investment choices, it can be required to disgorge its revenues and profits for

having "participated" in Ferguson's breach of trust in choosing high-cost investment options.
Am. Compl. ¶ 151.  Not so.  As to non-fiduciaries who are charged with participating in a
fiduciary's breach of trust, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits only
"appropriate equitable relief"—that is, only such relief as would have traditionally been available
from a court in equity.  *See Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10
(2002).  In practical terms, this limits monetary relief to the return of sums that are traceable to
specific funds in the non-fiduciary's possession; recoveries cannot be obtained from receipts that
have been commingled with the non-fiduciary's general assets.  *See id.* at 213 (equity allows the
recovery of money or property from a non-fiduciary only "where money or property identified as
belonging in good conscience to the plaintiff c[an] clearly be traced to particular funds or
property in the defendant's possession").  These limitations are fatal to plaintiff's non-fiduciary
claim here.  Assuming for the sake of argument that Prudential "participated in a breach of trust"
by Ferguson merely by receiving agreed-upon compensation in connection with the investment
options that Ferguson selected from those available on Prudential's platform, those sums are not
traceable to specific funds in Prudential's possession but rather have been commingled with
Prudential's general assets.  What plaintiff is really seeking (indeed, as Count II expressly avers)
is "damages"—and, as noted, money damages are not available under § 502(a)(3).  *See id.* at
210-11; *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d
150, 155 (2d Cir. 2014) (the "key factor" in analyzing whether the relief is permissibly sought
under ERISA "is whether a claimant was seeking restitution from a defendant's general funds, in
which case the claim was legal, or whether a claimant was seeking to recover money that could
be traced to a particular fund held by a defendant, in which case the claim was equitable").

24

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed.  Moreover, because plaintiff was afforded the opportunity to amend his pleading, and did so, after receiving a wealth of documents detailing the terms of the parties' contractual relationship and the characteristics of the investment products chosen by Ferguson, the Amended Complaint should be dismissed with prejudice as to Prudential.

Respectfully submitted,

 /s/ Brian D. Boyle
Brian D. Boyle (*pro hac vice*)
Jeffrey W. Kilduff (*pro hac vice*)
Shannon M. Barrett (*pro hac vice*)
Meaghan VerGow (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Tel.: (202) 383-5300
Fax: (202) 383-5414
bboyle@omm.com
jkilduff@omm.com
sbarrett@omm.com
mvergow@omm.com

James T. Shearin (ct 01326)
PULLMAN & COMLEY
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601
Tel.: (203) 330-2240
Fax: (203) 576-8888
jtshearin@pullcom.com

*Attorneys for the Prudential Defendants*

25

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on June 13, 2016, a copy of the above Memorandum in Support of the Prudential Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

 /s/ *James T. Shearin*
James T. Shearin (ct 01326)

26