IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD A. ROSEN, on behalf of the Ferguson Enterprises, Inc. 401(k) Retirement Savings Plan and on behalf of all other similarly situated employee benefit plans,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>PRUDENTIAL RETIREMENT INSURANCE AND ANNUITY COMPANY, PRUDENTIAL BANK & TRUST, FSB, CAPFINANCIAL PARTNERS, LLC d/b/a CAPTRUST FINANCIAL ADVISORS, and FERGUSON ENTERPRISES, INC.,<br><br>　　　　　　Defendants. | Civil Action No.<br>3:15-cv-1839 VAB |

**DEFENDANT FERGUSON ENTERPRISES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## TABLE OF CONTENTS

                                                                                   Page

I. INTRODUCTION .................................................................................................................. 1

II. FACTUAL BACKGROUND .................................................................................................. 3

III. LEGAL STANDARD .............................................................................................................. 6

IV. ARGUMENT ........................................................................................................................... 7

    A.    Plaintiffs' Excessive Fee Claim In Count I Fails Because Ferguson Satisfied Its Fiduciary Duty By Offering An Array Of Investment Options With Varying Risk And Fee Profiles ............................................................. 7

    B.    Plaintiffs' Claim In Count I About GoalMaker Fails ........................................... 12

V. CONCLUSION ...................................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................6

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
    949 F.2d 42 (2d Cir. 1991) ......................................................................................................4

*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
    770 F. Supp. 2d 497 (E.D.N.Y. 2011) ....................................................................................4

*Hecker v. Deere & Co.*,
    556 F.3d 575, *reh'g denied*, 569 F.3d 708 (7th Cir. 2009) ............................................. passim

*In re Longtop Fin. Techs. Ltd. Secs. Litig.*,
    939 F. Supp. 2d 360 (S.D.N.Y. 2013) .....................................................................................4

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ............................................................................................ passim

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.
    Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ....................................................................................................7

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) ............................................................................................ passim

*Taveras v. UBS AG*,
    612 F. App'x 27 (2d Cir. 2015) ........................................................................................7, 12

*Taylor v. United Techs. Corp.*,
    354 F. App'x 525 (2d Cir. 2009) .......................................................................................8, 10

*Taylor v. United Techs. Corp.*,
    No. 06-1494(WWE), 2009 WL 535779 (D. Conn. Mar. 3, 2009) ...................................10, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................................................4

*Tibble v. Edison International*,
    729 F.3d 1110 (9th Cir. 2013),
    *vacated on other grounds*, 135 S. Ct. 1823 (2015) .......................................................9, 10, 11

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Van Billiard v. Farrell Distrib. Corp.*,
  No. 09-78, 2009 WL 4729965 (D. Vt. Dec. 3, 2009) ................................................................ 4

**RULES**

Fed. R. Civ. P. 12(b)(1) ................................................................................................................ 7

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... passim

**I.      INTRODUCTION**

Plaintiffs, a current participant and a former participant of the Ferguson Enterprises, Inc. 401(k) Retirement Savings Plan f/k/a Wolseley North America 401(k) Plan (the "Ferguson Plan" or "Plan"), originally brought this case as a purported class action against a service provider that provides administrative services to thousands of different retirement plans. They assert claims on behalf of the Ferguson Plan and all other allegedly similarly situated plans with which the service provider has contracted for these services.  Plaintiffs primarily allege that the service provider engaged in prohibited transactions and breaches of fiduciary duty in violation of the Employee Retirement Income Security Act ("ERISA") by, among other things, receiving revenue-sharing payments from mutual funds in which plan assets were invested under group annuity contracts and group funding agreements.

For some yet to be determined reason, Plaintiffs have now added Ferguson Enterprises, Inc. ("Ferguson"), the plan sponsor and administrator of the Ferguson Plan, and CapFinancial Partners, LLC d/b/a CapTrust Financial Advisors ("CapTrust") as Defendants.[1]  As to Ferguson, Plaintiffs' factual allegations in the Amended Complaint span only *five* paragraphs.[2]  (¶¶ 102-06).  The sum and substance of the claims brought against Ferguson on behalf of a purported sub-class are that Ferguson breached its fiduciary duty under Section 404(a) of ERISA by causing the Plan to offer actively managed mutual funds with high investment management fees

---

[1]   Throughout the Amended Complaint, Plaintiffs refer to Ferguson and CapTrust collectively as the "Ferguson Defendants" (*see* Dkt. No. 35, ¶ 28) and do not distinguish between these two entities with regard to any factual allegations.  (¶¶ 102-06).  Citations to the Amended Complaint are indicated throughout this memorandum of law as "(¶ __)".

[2]   On May 17, 2016, the Court granted Plaintiffs' unopposed motion to consolidate the cases originally filed separately by Plaintiff Richard A. Rosen ("Rosen" or the "*Rosen* Action") and Plaintiff Randall C. Muir ("Muir" or the "*Muir* Action").  (Dkt. Nos. 46-47).  The Court also designated the Amended Complaint in the *Rosen* Action (Dkt. No. 35) as the operative complaint.  (Dkt. Nos. 46-47).  As such, it is Ferguson's understanding that Plaintiff Muir is now asserting his claims in the Amended Complaint.

(Count I).  (¶¶ 103, 145).   These claims are limited to allegations that (1) Ferguson offered some actively managed mutual funds with higher expense ratios than passively managed "index" mutual funds, and (2) Ferguson offered participants a voluntary asset allocation assistance tool, known as "GoalMaker."[3]  (¶¶ 103-06).

Plaintiffs' claims fail as a matter of law based on the limited facts alleged in the Amended Complaint.  First, Plaintiffs' excessive investment fee claim against Ferguson is based on threadbare allegations that Ferguson offered actively managed mutual funds with "excessive" fees when it should have offered lower-cost, passively managed index funds.  Circuit courts, however, have affirmed dismissal of virtually identical ERISA-fee claims.  Those cases teach that plan fiduciaries satisfy their obligations under ERISA by providing participants with a range of investment options with a range of fees.  *See Renfro v. Unisys Corp.*, 671 F.3d 314, 319-20 (3d Cir. 2011) (affirming Federal Rule of Civil Procedure ("Rule") 12(b)(6) dismissal of ERISA 401(k) fee lawsuit where the fees ranged from 0.1% to 1.21%); *Hecker v. Deere & Co.*, 556 F.3d 575, 586, *reh'g denied*, 569 F.3d 708 (7th Cir. 2009) (affirming Rule 12(b)(6) dismissal of ERISA 401(k) fee lawsuit where the fees ranged from 0.07% to just over 1.0%).  Here, Plaintiffs cannot dispute that the Plan falls squarely within those precedents by including the requisite array of investment options with fees ranging from 0.04% to 1.02%.  Indeed, the Amended Complaint details the ways in which the Plan offers varying investment options spanning the risk

---

[3]  Plaintiffs also allege, in the alternative, a claim against the Ferguson Defendants for co-fiduciary breach to the extent that they are "not deemed fiduciaries or co-fiduciaries under ERISA" (Count II).  (¶ 151).  Because Ferguson does not challenge its fiduciary status, Count II – alleging claims against non-fiduciaries – is inapplicable to Ferguson and must be dismissed.  (*See id.* (alleging that "any such Defendant is liable to the Class and Sub-Class, respectively, for all recoverable damages and relief as a non-fiduciary that knowingly participated in a breach of trust")).  Plaintiffs do not bring a prohibited transaction claim under ERISA against Ferguson.  (*See* ¶ 145).

spectrum, and ERISA neither prohibited Ferguson from offering actively managed mutual funds, nor required Ferguson to offer index funds exclusively. In fact, the Plan offered low-cost, passively managed investment options (through an institutional index fund), precisely what Plaintiffs allege should have been offered. Thus, Plaintiffs fail to draw a plausible inference that Ferguson breached its fiduciary duty to the Plan by failing to monitor the Plan's expenses. Their claim is legally deficient as a matter of law and should be dismissed.

Second, precisely because Plaintiffs cannot credibly challenge the reasonableness of the 401(k) plan offerings generally, Plaintiffs focus on an optional asset allocation program, GoalMaker. Yet, Plaintiffs' allegations regarding GoalMaker are the same as those regarding the 401(k) options generally – that the Plan included actively managed mutual funds with higher fees than index funds. Like Plaintiffs' excessive fee claim, this claim too should be dismissed for the same reasons. Moreover, the fee disclosures provided to participants reveal the exact investments included in GoalMaker, including the nature of the investment options, the performance of those investment options, and the fees associated with each of those investments. In fact, Plaintiffs do not actually allege that they ever used GoalMaker, so they lack constitutional standing to assert claims challenging it. As such, Plaintiffs' Amended Complaint should be dismissed in its entirety as to Ferguson.

## II.  FACTUAL BACKGROUND

Ferguson is the sponsor and administrator of the Ferguson Plan. (¶ 27). The Plan is a "defined contribution plan" under ERISA. (¶ 1). Based on its most recent Form 5500 submitted

to the Department of the Treasury, the Plan has over 22,000 participants and $1.2 billion in assets. (Ex. 1, Ferguson Plan Form 5500 (2014), at pp. 3, 24).[4]

The Ferguson Plan offers a broad menu of investment options to Plan participants, substantially similar to the investment lineups in other lawsuits where courts have dismissed similar claims pursuant to Rule 12(b)(6). For example, based on the Plan's October 31, 2014 Overview of Plan Investment Options and Fees, upon which Plaintiffs rely in the Amended Complaint (*see* ¶¶ 97, 104), Plan participants could invest in among sixteen core investment options, spanning the risk-return spectrum. (Ex. 2, October 31, 2014 Fee Disclosure, at pp. 4-8;

---

[4] In ruling on a Rule 12(b)(6) motion, the Court may consider documents incorporated into the Amended Complaint by reference, matters subject to judicial notice, and those documents integral to the Amended Complaint. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Thus, the Court may take judicial notice of "public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission[,]" such as prospectuses. *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 506-07 (E.D.N.Y. 2011); *see also In re Longtop Fin. Techs. Ltd. Secs. Litig.*, 939 F. Supp. 2d 360, 368 n.24 (S.D.N.Y. 2013) (taking judicial notice of a fund's prospectus filed with SEC). Additionally, the Court may take judicial notice of other publicly filed documents, such as Form 5500s, which are filed with the Department of the Treasury. *See Van Billiard v. Farrell Distrib. Corp.*, No. 09-78, 2009 WL 4729965, at *7-8 (D. Vt. Dec. 3, 2009). Finally, the Court may rely on plan-related materials that are referenced in, but not attached to the Amended Complaint, or other documents that are integral to or incorporated by reference into the Amended Complaint. *See Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). Courts in other jurisdictions have also followed this approach. *See Hecker*, 556 F.3d at 582-83; *Renfro*, 671 F.3d at 319 (citing with approval lower court's decision to take judicial notice of prospectus filed with SEC). Such documents, many of which Plaintiffs rely on and cite in the Amended Complaint (*see, e.g.*, ¶¶ 97, 104 (October 31, 2014 Overview of Plan Investment Options and Fees); ¶¶ 7, 9, 11 (describing information found in Ferguson's 2014 Form 5500)), are attached to this Motion as Exhibits 1-4.

¶¶ 103-05). These included various mutual funds, a stable value fund, and a group fixed annuity option.[5] (¶¶ 97, 103-105; Ex. 2 at pp. 4-8).

Of these funds, the Plan offers passively managed index funds, as well as actively managed funds, only some of which are Prudential funds. (¶¶ 103-105; Ex. 1 at p. 32; Ex. 2 at pp. 4-8; Ex. 3, Ferguson Plan Form 5500s, Schedule H, Line 4i (2010-2013)). Passively managed funds do not make any independent investment choices but simply track an established market index, such as the Standard & Poor's 500 Index.[6] Actively managed funds generally try to identify securities likely to outperform an index fund or invest in a portfolio designed to take a greater or lesser risk than an index.[7] As a result, actively managed funds tend to have higher fees than passively managed index options. As of October 31, 2014, the expense ratios for the funds offered in the Plan ranged from 0.04% to 1.02% (or 4 to 102 basis points ("bps")).[8] (Ex. 2 at pp. 4-6; *see also* ¶ 104).

In addition to the actively managed mutual fund options about which Plaintiffs complain, the Plan here has for years offered passively managed investment options. Indeed, although Plaintiffs ignore this fact in their Amended Complaint, the Plan has offered the Vanguard Institutional Index Fund since 2010. (*See* Ex. 1 at p. 32; Ex. 3). The expense ratio on this low-cost option ranged from 0.04% to 0.05% between 2010 and the present. (Ex. 4, Excerpts from

---

[5] Plaintiffs assert no claims with regard to the Plan's inclusion of the Stable Value Fund as an investment option. (¶ 44).

[6] *See Loomis v. Exelon Corp.*, 658 F.3d 667, 669-70 (7th Cir. 2011).

[7] *See id.*

[8] The gross expense ratio is the total cost of managing the mutual fund; the net expense ratio is the amount investors actually pay after waivers or rebates. Expense ratios are expressed as a percentage of total assets invested (e.g., 0.75%). *See Hecker*, 556 F.3d at 578.

the Vanguard Institutional Index Fund Prospectuses (2015-2016);[9] *see also* Ex. 2 at p. 4). Thus, participants who wanted a very low-cost option could invest in the Vanguard Institutional Index Fund, but a participant who wanted active management could select options with different risk and return characteristics and different fees.

In addition to these investment choices described above, Ferguson also offered an optional asset allocation service, "GoalMaker," for Plan participants. (¶ 97). Plan participants could use GoalMaker to diversify their investments among both Prudential and non-Prudential investment options available in the Plan, again with varying risk and return characteristics and fees. (¶ 97; Ex. 2 at p. 4-8, 10 (listing funds in GoalMaker and fees for the funds); Ex. 1 at p. 32; Ex. 3).

### III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The allegations must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the well-pleaded facts must allow the Court to infer more than the mere possibility of misconduct. *Id.* Here, Plaintiffs do not meet this standard for the reasons explained below.

---

[9] Available at https://www.sec.gov/Archives/edgar/data/862084/000093247116013307/instindex042016.htm and https://www.sec.gov/Archives/edgar/data/862084/000093247115006061/instlindex485b042015.htm (last visited June 13, 2016).

IV.    **ARGUMENT**

    A.    **Plaintiffs' Excessive Fee Claim In Count I Fails Because Ferguson Satisfied Its Fiduciary Duty By Offering An Array Of Investment Options With Varying Risk And Fee Profiles.**

Plaintiffs allege in Count I that Ferguson breached its fiduciary duty to the Ferguson Plan by imprudently selecting an investment lineup that included actively managed investment options with purported unreasonable investment management fees. From this narrow allegation, Plaintiffs suggest that the Court must infer that Ferguson failed to prudently and loyally monitor the Plan's expenses. *See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719-20 (2d Cir. 2013) (explaining that for an ERISA "plaintiff relying on inferences from circumstantial allegations, [the pleading] standard generally requires the plaintiff to allege facts, accepted as true, showing that a prudent fiduciary in like circumstances would have acted differently"). Plaintiffs are mistaken.

As a preliminary matter, Plaintiffs do not even allege in the Amended Complaint that they personally invested in these actively managed mutual funds, and, therefore, they lack constitutional standing to pursue – and the Court lacks jurisdiction to adjudicate – Count I with respect to any of these funds. *See, e.g.*, *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015). Accordingly, this portion of Count I against Ferguson should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

Regardless, Plaintiffs' claim does not support an inference of imprudence or disloyalty. They ignore that several Circuits have held that fiduciaries satisfy ERISA by offering participants an array of investment options charging a reasonable range of expense ratios. *See Renfro*, 671 F.3d at 327 (affirming Rule 12(b)(6) dismissal of claims that fiduciaries should have

7

selected lower-cost investment options); *Loomis*, 658 F.3d at 669, 673-74 (affirming Rule 12(b)(6) dismissal of complaint and holding that fiduciaries satisfied their duties by offering a mix of investment options and "le[aving the] choice [of investments] to the people who have the most interest in the outcome"); *Hecker*, 556 F.3d at 578, 585-86 (affirming Rule 12(b)(6) dismissal of claims that fiduciaries violated ERISA by offering investment options with excessive fees); *see also Taylor v. United Techs. Corp.*, 354 F. App'x 525, 527-28 (2d Cir. 2009) (summery order affirming judgment in favor of fiduciaries where plan offered actively managed mutual funds in addition to other investment options).

In *Renfro*, the Third Circuit affirmed the Rule 12(b)(6) dismissal of ERISA-fee claims where the plan offered a number investment options – including a stable value fund, employer stock fund, and mutual fund options provided under a trust agreement with Fidelity – with expense ratios of the mutual funds ranging from 0.10% to 1.21%.  671 F.3d at 318-20, 327-28. The plan in *Renfro* used a directed trustee and recordkeeper – Fidelity.  *Id.* at 318-19.  Unlike the Ferguson Plan, however, the trust agreement in *Renfro* required that any plan investment options managed by Fidelity had to be Fidelity funds.  *Id.*  The Third Circuit nevertheless rejected the plaintiffs' claims that Unisys breached its fiduciary duty by offering higher fee investment options, reasoning that the duty of prudence simply required a fiduciary to "offer participants meaningful choices about how to invest their retirement savings" and a "reasonable mix and range of investment options."  *Id.* at 327-28.  Offering mutual funds with fees ranging from 0.10% to 1.21% satisfied, as a matter of law, the defendant's burden, so the plaintiffs' claim failed as a matter of law.  *Id.*

Similarly, in *Hecker*, the Seventh Circuit affirmed the Rule 12(b)(6) dismissal of the plaintiffs' claims and rejected ERISA-fee claims where the plan at issue offered investment options with expense ratios ranging from 0.07% to "just over 1%." 556 F.3d at 586. The court held that, as a matter of law, the fiduciaries complied with ERISA's fiduciary duties by offering a wide range of expense ratios. *Id.* In so holding, the court recognized that, although other funds might have been available with lower expense ratios, "nothing in [ERISA] requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Id.*

Two years after *Hecker*, the Seventh Circuit again affirmed the Rule 12(b)(6) dismissal of ERISA-fee claims in *Loomis*, emphasizing that the plan offered investment options with expense ratios ranging from 0.03% to 0.96%, similar to the expense ratio range of the Ferguson Plan. 658 F.3d at 669-70. In an opinion authored by Judge Easterbrook, the court rejected the argument that the plan should not have offered higher-cost actively managed mutual funds: "Exelon offered participants a menu that includes high-expense, high-risk, and potentially high-return funds, together with low-expense index funds that track the market, and low-expense, low-risk, modest-return bond funds. It has left choice to the people who have the most interest in the outcome, and it cannot be faulted for doing this." *Id.* at 673-74.

Most recently, in *Tibble v. Edison International*, 729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823 (2015), the Ninth Circuit agreed with the Third and Seventh Circuits, affirming summary judgment in favor of plan fiduciaries where the plan included mutual funds with expense ratios ranging from 0.03% to 2.0%. 729 F.3d at 1135. The Ninth Circuit, like the Third and Seventh Circuits before it, rejected the plaintiffs' challenge to the

investment lineup and held that the range of expense ratios and investment options among the funds was sufficient to satisfy the fiduciaries' obligations. *Id.*

Although the Second Circuit has not spoken in depth on these issues, in *Taylor*, it affirmed a decision by the district court wherein the court held that an ERISA fiduciary was not imprudent in selecting higher cost mutual funds. 354 F. App'x at *528. The plaintiffs in *Taylor v. United Techs. Corp.*, No. 06-1494(WWE), 2009 WL 535779 (D. Conn. Mar. 3, 2009), asserted, like here, that the defendant breached its fiduciary duties by offering actively managed mutual funds with unreasonable fees and expenses. 2009 WL 535779, at *10. In granting summary judgment in favor of the defendant, the district court rejected this argument, reasoning that the selection of actively managed mutual funds was not objectively imprudent compared to lower-fee, passive index funds and that the plaintiffs had not attacked the fees of any specific mutual fund as unreasonable in light of other analogous mutual fund fees. *Id.*

In a summary order issued after the Seventh Circuit's decisions in *Hecker*, the Second Circuit in *Taylor* affirmed the district court's judgment "substantially for the reasons stated in the District Court's thorough and well-reasoned memorandum of decision." 354 F. App'x at 527. In so doing, and later in denying the plaintiffs' petition for rehearing,[10] the Second Circuit squarely rejected the same allegations Plaintiffs make here – that the fiduciaries should have offered low-cost index funds instead of higher-priced actively managed funds. *See* Brief for Appellant, *Taylor v. United Techs. Corp.*, No. 09-1343, 2009 WL 295634, at *8-11 (June 25, 2009);

---

[10] *See* Order Denying Petition for Rehearing and Petition for Rehearing en banc, *Taylor v. United Techs. Corp.*, No. 09-1343 (2d Cir. Feb. 4, 2010).

Appellant's Petition for Rehearing, *Taylor v. United Techs. Corp.*, No. 09-1343, 2009 WL 8200815, at *11-14 (Dec. 15, 2009).

Here, there are no grounds for deviating from the above precedents because the mix and range of investment options and overall expense ratios for the Plan's investment options are reasonable. The Plan offers at least sixteen core investment options with gross expense ratios ranging from 0.04% to 1.02%. *See supra* at 4-6. This range of fees that the Plan offers participants is within the range of fees that the courts in *Hecker*, *Loomis*, *Renfro*, and *Tibble* held were reasonable as a matter of law.[11] The Plan likewise offers investments spanning the risk-return spectrum, such as a stable value fund, passively managed index funds, and actively managed mutual funds. *See supra* at 4-6. This investment lineup is consistent with those upon which the Third and Seventh Circuits relied in dismissing excessive fee claims under Rule 12(b)(6). *See, e.g.*, *Loomis*, 658 F.3d at 673-74 (explaining that the menu available to participants included, among other options, "high-expense, high-risk, and potentially high-return funds, together with low-expense index funds that track the market").

Plaintiffs' attempt to categorically condemn as "unsuitable" actively managed mutual funds because of their relatively higher fees (*see* ¶¶ 103-04) ignores several courts that have rejected similar arguments and fails as a matter of law. *See Hecker*, 556 F.3d at 586 (dismissing claims that fiduciaries should have selected cheaper funds); *Renfro*, 671 F.3d at 326-28 (same); *Taylor*, 2009 WL 535779, at *10 (explaining that there is nothing per se imprudent about

---

[11] *Hecker*, 556 F.3d at 586 ("At the low end, the expense ratio was .07%; at the high end, it was just over 1%."); *Loomis*, 658 F.3d at 669-70 ("[E]xpense ratios rang[ed] from 0.03% to 0.96%."); *Renfro*, 671 F.3d at 319 (fees "ranged from 0.1% to 1.21%"); *Tibble*, 729 F.3d at 1135 ("[E]xpense ratio varied from .03[%] to 2%.").

actively managed funds).  The duty of prudence only requires a fiduciary to "offer participants meaningful choices about how to invest their retirement savings" and a "range of investment options and the characteristics of those included options—including the risk profiles, investment strategies, and associated fees."  *Renfro*, 671 F.3d at 327; *see also Hecker*, 556 F.3d at 586 ("[N]othing in [ERISA] . . . requires plan fiduciaries to include any particular mix of investment vehicles in their plan.").  Plaintiffs' mere allegations that the Plan should have offered a greater number of "less expensive" index funds are therefore insufficient to state a plausible claim for which relief can be granted.  Accordingly, Count I should be dismissed.

> **B.    Plaintiffs' Claim In Count I About GoalMaker Fails.**

Plaintiffs also try to pin liability on Ferguson for "including GoalMaker in the Plan without adequately disclosing its true nature to Participants." (¶ 106).  The Amended Complaint admits that GoalMaker is an optional asset allocation program available to Plan participants and that it offers a variety of investment options.  (¶¶ 97, 104).  Plaintiffs' claim fails as a matter of law.

First, Plaintiffs do not allege that they personally used GoalMaker.  Plaintiffs therefore lack constitutional standing to pursue this claim.  *See Taveras*, 612 F. App'x at 29 ("An ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant.").

Second, this claim is simply a repackaging of Plaintiffs' claims regarding actively managed funds.  GoalMaker includes only investment options otherwise offered to the Plan participants.  (¶¶ 97, 104; Ex. 2 at pp. 4-8, 10).  The inclusion of GoalMaker in the mix of these investment options, which have a wide range of expense ratios (*see supra* at 5-6), cannot support

a breach of fiduciary duty.  *See Loomis*, 658 F.3d at 673-74 (holding that fiduciaries satisfied their duties by offering a mix of investment options and "le[aving the] choice [of investments] to the people who have the most interest in the outcome").  Plan participants are free to choose whether to use GoalMaker to allocate their funds to a number of different investment options or whether to do so separate and apart from GoalMaker.

Moreover, the Plan's statutorily required fee disclosures (e.g., The Overview of Plan Investment Options and Fees upon which Plaintiffs rely (¶¶ 97, 104)) reveal to participants the exact investments included in GoalMaker, including the nature of the investment options, the performance of those investment options, and the fees associated with each of those investments. (Ex. 2 at pp. 4-8, 10; ¶¶ 97, 104).  Thus, these disclosures alert the Plan participants to the investment options included in GoalMaker and the expense ratios.  (Ex. 2 at pp. 4-8, 10).  As such, because all necessary information about GoalMaker was disclosed to participants, Plaintiffs cannot raise any plausible inference that Ferguson breached its fiduciary duty with regard to GoalMaker.

## V.    CONCLUSION

For the reasons discussed above, Defendant Ferguson Enterprises, Inc. respectfully requests that the Court dismiss the Amended Complaint with prejudice.

Dated:  June 13, 2016                                  Respectfully submitted,

/s/ Jeremy P. Blumenfeld
Jeremy P. Blumenfeld [ct23943]
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
(215) 963-5258 (Telephone)
(215) 963-5001 (Facsimile)
jeremy.blumenfeld@morganlewis.com

William J. Delany (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC  20004
(202) 739-5562 (Telephone)
(215) 963-5001 (Facsimile)
william.delany@morganlewis.com

Christopher M. Wasil [ct28578]
MORGAN, LEWIS & BOCKIUS LLP
One State Street
Hartford, CT  06103
(860) 240-2719 (Telephone)
(860) 240-2515 (Facsimile)
christopher.wasil@morganlewis.com

*Attorneys for Defendant Ferguson Enterprises, Inc.*