# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD A. ROSEN, : | |
| On Behalf of the Ferguson Enterprises, Inc. : | |
| 401(k) Retirement Savings Plan and On Behalf : | |
| Of All Other Similarly Situated Employee : | |
| Benefit Plans, : | |
| : | |
|      Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 3:15-cv-1839 (VAB) |
| PRUDENTIAL RETIREMENT INSURANCE : | |
| AND ANNUITY COMPANY, PRUDENTIAL : | |
| BANK & TRUST, FSB, CAPFINANCIAL : | |
| PARTNERS, LLC d/b/a CAPTRUST : | |
| FINANCIAL ADVISORS and : | |
| FERGUSON ENTERPRISES, INC., : | |
| : | |
|      Defendants. : | |

## RULING ON MOTIONS TO DISMISS

Richard A. Rosen brings this lawsuit under the Employee Retirement Income Security

Act ("ERISA") on behalf of the 401(k) Retirement Savings Plan in which he participates, as well

as on behalf of other similarly situated participants (together "Plaintiffs").[1]  Mr. Rosen alleges

that the following defendants violated ERISA: Prudential Retirement Insurance and Annuity

Company and Prudential Bank & Trust, FSB (together "Prudential"); Ferguson Enterprises, Inc.

("Ferguson"), the employer and sponsor of the retirement savings plan; and CapFinancial

Partners, LLC d/b/a CapTrust Financial Advisors ("CapFinancial"), the investment advising

company chosen by Ferguson.  Prudential, Ferguson and CapFinancial have filed three separate

---

[1] The Complaint was initially filed in December 2015 and was amended in April 2016.  In May 2016, this case was consolidated with a similar action brought by Randall Muir (*Muir v. Prudential Retirement Insurance & Annuity Co*., No. 16-cv-0319 (VAB)), and the Amended Complaint was designated the operative complaint for both plaintiffs.  5/17/2016 Order, ECF No. 46.

Motions to Dismiss, arguing that Mr. Rosen has failed to state a claim against each Defendant under Fed. R. Civ. P. 12(b)(6).  For the reasons outlined below, all three Motions to Dismiss are **GRANTED**.

## I.   FACTUAL BACKGROUND

Mr. Rosen participates in an employer-provided 401(k) Retirement Savings Plan through Ferguson Enterprises, Inc. ("Ferguson Plan" or "the Plan").  Am. Compl. ¶ 21.  Ferguson, his former employer, served as the plan sponsor and administrator.  *Id*. at ¶ 27.  Ferguson engaged a separate company, CapFinancial, to provide investment advice with respect to the Plan and ultimately decided to engage Prudential as the service provider for the Plan.  *Id*. at ¶¶ 22, 26.

### A.  The Ferguson 401(k) Retirement Savings Plan ("Ferguson Plan")

The Ferguson Plan offered employees the opportunity to choose from a menu of distinct investment options.[2]  Most of the investment options offered by the Plan took the form of mutual funds, and the majority of those funds were "actively-managed" mutual funds.  *Id*. at ¶¶ 102-104. "Actively-managed" mutual funds typically include higher fees than "passively-managed" mutual funds.  *Id.*  By October 2014, eleven of the sixteen investment options offered to Plan participants were actively-managed mutual funds.  Pls. Mem. in Opp. to Ferguson Mot. to Dismiss at 5, ECF No. 72; Pls. Mem. in Opp. to CapFinancial Mot. to Dismiss at 5-6, ECF No. 73.

Prudential's compensation for its role as service provider to the Plan came in part from revenue-sharing agreements between Prudential and these mutual funds.  Am. Compl. at ¶¶ 3-4. Through this revenue-sharing model, Prudential would receive payments in exchange for making investments in the selected mutual funds.  *Id.*  These payments were ultimately borne by Plan

---

[2] Until September 2013, the Plan offered a total of thirteen investment options.  As of October 2014, the Plan offered a total of sixteen investment options.  Pls. Mem. in Opp. to Ferguson Mot. to Dismiss at 5.

participants through a variety of fees, including, for example, "12b-1 fees, administration fees, service fees, sub-transfer agent fees, other indirect compensation and/or similar fees." *Id*. at ¶ 4. The Amended Complaint describes these payments as "revenue-sharing payments" ("RSPs") or "kickbacks." *Id*.  Plaintiffs believe that these fees constituted unnecessary expenses designed to benefit Prudential at the expense of Plan participants.  *Id*. at ¶¶ 4, 14 (alleging that "the amounts of the RSPs bear absolutely no relationship to the cost or value of any such services").

Prudential also offered to Plan participants a program called "GoalMaker," an optional program within the Plan that assisted individual Plan participants in making their investment selections by providing pre-selected groupings of investment options. *Id*. at ¶¶ 96-101. According to Plaintiffs, the GoalMaker program directed participants to place their investments into higher-cost mutual funds that engaged in revenue-sharing with Prudential, resulting in additional compensation to Prudential at the expense of the Plan and Plan participants.  *Id*. at ¶ 96.

### B.  Contractual Agreements Governing Plan Investments

A series of contractual agreements governed the investment plans between Ferguson and two Prudential entities, Prudential Retirement Insurance and Annuity Company ("PRIAC") and Prudential Bank & Trust, FSB ("Prudential Trust").  *Id*. at ¶¶ 21-25.  Plaintiffs allege that Prudential Trust and PRIAC operate as "alter-egos" of one another and together function as one company.  *Id*. at ¶ 24.  Through Prudential Trust, Prudential entered into a Trust Agreement with Ferguson in which Prudential agreed to serve as a "directed trustee" for the Plan.  Trust Agreement, Prudential Ex. A to VerGow Dec., ECF No. 63-3.  This agreement gave Prudenital the authority to administer the assets and investments of the Plan, but prohibited it from making any decisions related to Plan assets, except in accordance with Ferguson's directions.  *Id*. at § 3.

Through PRIAC, Prudential also entered into a separate Group Annuity Contract with Ferguson in which Prudential agreed to manage "Separate Accounts," group variable annuities owned by Prudential, on behalf of the Plan.  Group Annuity Contract, Prudential Ex. C to VerGow Dec., ECF No. 63-5.  These investment vehicles allowed for assets from different plans to be pooled together and then invested elsewhere in exchange for "accumulation units," which functioned as "shares" that tracked the performance of the investments.  Am. Compl. at ¶¶ 50-52. Unlike the Trust Agreement, through which Prudential agreed to serve as a directed trustee, the Group Annuity Contract granted Prudential the authority to manage the investment of funds contained in those particular investment vehicles "at its sole discretion."  Group Annuity Contract at R20.1, Separate Account E Rider.

In addition to the Separate Accounts, Prudential also operated Collective Trusts, which similarly allowed for the commingling of assets from different plans.  Declaration of Trust, Pls. Ex. 3 to Rubinow Dec., ECF No. 74-4.  Like the Separate Accounts described above, Prudential held legal ownership over these Collective Trusts, and the Separate Accounts also made investments in these Collective Trusts.  Am. Compl. at ¶¶ 9-10.  While Plaintiffs specifically note that, as of December 31, 2014, over $254 million of Plan assets were invested through these Collective Trusts in a Core Conservative Bond Fund owned by Prudential, Plaintiffs do not challenge the propriety of those Collective Trust investments.  *Id*. at ¶ 9.

### C.  Alleged ERISA Violations

Mr. Rosen, on behalf of the Plan and similarly situated retirement plan participants, challenges both the composition of the Plan's investment options as well as Prudential's revenue-sharing arrangements with mutual funds.  Specifically, Plaintiffs complain about (1) the concentration of actively-managed mutual funds offered as part of the Plan's menu; (2)

4

Prudential's alleged "self-dealing" through its receipt of revenue-sharing payments in exchange for investing Plan assets in mutual funds; and (3) the inclusion of Prudential's GoalMaker product in the Plan, which allegedly steers participants into high-cost investment options to the benefit of Prudential and against the best interests of Plan participants.

Count One of Mr. Rosen's Amended Complaint alleges that Prudential engaged in prohibited transactions and breached its fiduciary duties in violation of ERISA through these activities. *Id*. at ¶¶ 135-145. Count One further alleges that Ferguson and CapFinancial collectively breached their fiduciary duties by choosing an overly expensive menu of investment options and by failing to monitor Prudential in its administration of these various plans and investments. *Id*. at ¶ 145. Count Two of the Amended Complaint alleges co-fiduciary liability as to all Defendants and further alleges that, to the extent that a defendant is not considered a fiduciary, it should be held liable for knowing participation in a breach of trust. *Id*. at ¶¶ 150-151. Each of the three Defendants now seeks dismissal, with prejudice, of both counts of the Amended Complaint. For the reasons outlined below, both Counts are dismissed with prejudice as to all three Defendants.

## II.  STANDARD OF REVIEW

When considering a motion to dismiss under Fed R. Civ. P. 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.) (citation omitted), *cert. denied*, 537 U.S. 1089 (2002). The proper consideration is not whether the plaintiff ultimately will prevail, but whether the plaintiff has stated a claim upon which relief may be granted such that the plaintiff should be entitled to offer evidence to support the claim. *See id*. at 125.

In reviewing a complaint under Rule 12(b)(6), the Court applies "a 'plausibility standard,'" which is guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the Court must accept as true the allegations in a complaint, but this requirement "is inapplicable to legal conclusions." *Id.* Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. *Iqbal,* 556 U.S. at 679. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Although courts considering motions to dismiss under Rule 12(b)(6) generally "must limit [their] analysis to the four corners of the complaint," they may also consider documents that are "incorporated in the complaint by reference." *Kermanshah v. Kermanshah*, 580 F.Supp.2d 247, 258 (S.D.N.Y. 2008). The Court may also consider matters subject to judicial notice, which include public disclosure documents filed with governmental agencies, such as the Securities and Exchange Commission and the Department of Treasury. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *DeSilva v. N. Shore-Long Island Jewish Health Sys. Inc.*, 770 F.Supp.2d 497, 506-07 (E.D.N.Y. 2011). Before considering materials outside the record on a motion to dismiss, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exists no material disputed issue of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (internal citations omitted).

## III.  DISCUSSION

Prudential argues that it is not a fiduciary as a matter of law and thus cannot be held liable for breach of fiduciary duty.  Prudential Mem. in Supp., ECF No. 63-1.   Ferguson and CapFinancial, in contrast, do not contest their fiduciary status, but they contend that, as a matter of law, the alleged conduct does not constitute a breach of fiduciary duty under ERISA. Ferguson Mem. in Supp., ECF No. 65-1; CapFinancial Mem. in Supp., ECF No. 62-1.  Each of the three Motions to Dismiss is addressed in turn.

### A.  Prudential

Although the Amended Complaint brings claims against all three named Defendants, the majority of its factual allegations focus only on Prudential.  In bringing this lawsuit, Plaintiffs seek to establish that service providers, like Prudential, violate ERISA when their compensation includes revenue-sharing with mutual funds.  In Plaintiffs' view, Prudential's participation in the alleged revenue-sharing model is, at its core, a violation of the fundamental ERISA principle of "prudence," which requires any fiduciary of an employer-sponsored 401(k) to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).

In its motion to dismiss and related filings, Prudential never addresses the prudence or imprudence of its decision to engage in revenue-sharing with mutual funds and similar investment instruments.  Instead, Prudential argues that it cannot be liable for a breach of fiduciary duty under ERISA because it was not acting as a fiduciary with respect to any of the alleged conduct.  According to Prudential, it lacked the authority and control required to act as a

fiduciary, as Ferguson, not Prudential, was contractually responsible for any relevant decisions regarding the Plan and its assets.

The Court is guided by basic common law principles when determining whether Prudential is a fiduciary and, in turn, whether Prudential acted imprudently in carrying out its fiduciary duties, to the extent that it had any.  Under ERISA, "[p]rudence is measured according to the objective 'prudent person' standard developed in the common law of trusts." *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984); *see also Tibble v. Edison Int'l.,* 135 S. Ct. 1823, 1828 (2015) ("In determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts.").  "Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989).  When interpreting whether a party exercised its discretionary powers in violation of ERISA, "courts may have to take account of competing congressional purposes, such as Congress' desire to offer employees enhanced protection for their benefits, on the one hand, and, on the other, its desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996).

### 1.  Legal Standard for Fiduciary Status

Under ERISA, a company can only be held responsible for a breach of fiduciary duty "to the extent that" the company was acting as a fiduciary when committing the alleged misconduct. 29 U.S.C. § 1002(21)(A).  "In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a

fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

There are three ways a party achieves "fiduciary" status:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); *see Haddock v. Nationwide Financial Services, Inc*., 419 F.Supp.2d 156, 164 (D. Conn. 2006) ("Under ERISA, to be a plan's fiduciary, a person or entity must be acting in the capacity of the plan's manager, financial advisor, or administrator").  "As [the Second Circuit] has stated, 'a person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only "to the extent" that he has or exercises the described authority or responsibility.'"  *Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co*., 302 F.3d 18, 28 (2d Cir. 2002) (citing *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987)).

Under the language of this statute, a company can be a fiduciary either by exercising managerial authority, 29 U.S.C. § 1002(21)(A)(i), or by possessing administrative authority, 29 U.S.C. § 1002(21)(A)(iii).  *See Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.,* No. 3:11-cv-282 (JCH), 2012 WL 10242276 at *4 (D. Conn. Sept. 27, 2012).  Prudential argues that it is not a fiduciary because it did not possess the authority to make investment decisions on behalf of the Plan, nor did it exercise any of its authority to invest Separate Account assets in mutual funds as alleged by Plaintiffs.  This argument is rooted in the language of the Trust

Agreement between Prudential Trust and Ferguson, which establishes Prudential Trust as the designated trustee for Ferguson.  Trust Agreement § 3(a).  Under the plain language of this agreement, Prudential "shall take no action except pursuant to directions received by it from the Employer… The Trustee shall have no duty or responsibility to determine the appropriateness of any plan investment, or to cause such investments to be changed."  *Id.*

Plaintiffs argue that, despite these contractual limitations, Prudential still had discretionary authority over various aspects of the Plan.  Specifically, they allege that Prudential possessed authority in the following ways: (1) legal ownership and control over the investments in Separate Accounts and Trusts, (2) power to adjust the available investment options and determine its own compensation, and (3) use of its GoalMaker program to direct participant investments.  *See* Pls. Mem. in Opp. to Prudential Mot. to Dismiss.  Plaintiffs claim that this authority is sufficient to establish Prudential's status as a fiduciary in connection with the alleged misconduct.

Prudential contests these allegations, insisting that its alleged actions in these areas were taken at the direction of Ferguson and not in the exercise of Prudential's discretionary authority. Prudential Mem. in Supp. at 7-8.  Prudential also insists that, to the extent that it did possess discretionary authority over the Separate Accounts, none of the Plan's Separate Account assets were invested in any mutual funds, and thus Prudential did not actually exercise any of its discretionary authority as required to be considered a fiduciary under ERISA.  *Id.* at 19.

### 2. Selection of Investment Options and Determination of Compensation

The majority of Prudential's arguments in support of its motion to dismiss are focused on Prudential's limited role in establishing and carrying out the terms of the Plan.  Prudential argues that Ferguson, as the primary fiduciary with respect to the Plan, and CapFinancial, as the

investment advisor, were ultimately responsible for directing investment decisions in connection with the Plan. *Id.* at 12-13. Prudential asserts that it acted only at Ferguson's direction and cannot be held responsible as a fiduciary based solely on its administration of the Plan in accordance with Ferguson's wishes. *Id.* at 13-14.

In support of its contention that it was not a fiduciary with respect to plan assets, Prudential relies on the terms of the Trust Agreement. *Id.* at 14. These terms require Prudential Trust, as a directed trustee of Ferguson, to act only in accordance with Ferguson's instructions when making decisions regarding Plan assets. *Id.* The agreement specifically states that Prudential shall "take no action except pursuant to directions received by it from the Employer" and further mandates that Prudential "shall have no duty or responsibility to determine the appropriateness of any plan investment, or to cause such investments to be changed." Trust Agreement §§ 3, 4.

As noted above, Prudential must first be considered a fiduciary in order to be held responsible for breach of fiduciary duties under ERISA. 29 U.S.C. § 1002(21)(A). Prudential can only be considered a fiduciary "to the extent that [it] has or exercises" the relevant authority or responsibility. *Harris Trust*, 302 F.3d at 28 (2d Cir. 2002). Courts in this Circuit have determined that a party's initial influence over the contract terms governing a retirement savings plan, without more, is not sufficient to confer fiduciary status. *See, e.g. F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987) ("When a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he has no authority over or responsibility to the plan… Such a person is not an ERISA fiduciary with respect to the terms of the agreement for his compensation").

Prudential, therefore, cannot be considered a fiduciary based on its initial selection of the available investment options for the Plan because this action was taken before the parties entered into a contractual relationship, and it was ultimately up to the plan sponsor—in this case, Ferguson—whether or not to engage the plan on the stated terms.  *See Zang v. Paychex, Inc*., 728 F.Supp.2d 261, 271 (W.D.N.Y. 2010) (granting motion to dismiss based on lack of fiduciary status, explaining that "[e]ven if [defendant service provider] could be said to have 'played a role' in [plan administrator]'s decision (by presenting him with a set of options), in the end, that decision was [plan administrator]'s to make").  The "mere creation and offering of a menu or lineup of funds cannot legally or logically give rise to fiduciary status.  Those lists, or menus, are created prior to the existence of any contractual relationship between the parties."  *Id.* at 272.

A service provider may still be considered an ERISA fiduciary, however, based on its role in determining the available menu of investment options, if the operative agreement allows it some discretionary authority to modify that menu.  *Healthcare Strategies*, 2012 WL 10242276 at *5-6; *Zang*, 728 F.Supp.2d at 271-272.  In *Healthcare Strategies*, this Court evaluated similar claims against a service provider who claimed to lack the discretion required for ERISA fiduciary status.  *Id*.  The deciding factor in that case was the defendant's freedom to make changes to the menu of available investment options without the employer's consent.  *Id*.  The court ultimately concluded that the defendants' "contractual right to delete and substitute mutual funds from its menu gave it discretion with respect to the administration of the plan sufficient to make it a fiduciary with respect to its allegedly inappropriate receipt of revenue in exchange for the inclusion of those funds on its menu."  *Id*. at *6; *see also Zang*, 728 F.Supp.2d at 271 (granting motion to dismiss where service provider "did have some ability to modify the list of funds available to the Plan, [but] the parties' agreement provided that before deleting or

substituting a fund on the list, [defendant] was required to give plaintiff at least sixty days' notice of the proposed change").

Here, unlike the defendant in *Healthcare Services*, Prudential did not have the contractual authority to delete or substitute mutual funds from its menu without first notifying Ferguson and ensuring its consent.  Trust Agreement §3(a).  The Amended Complaint alleges that Prudential made numerous changes to the mutual funds included within the Plan.  Am. Compl. ¶¶ 116-117; Pls. Mem. in Opp. to Prudential Mot. to Dismiss at 11, 15.  These factual allegations, however, do not support the imposition of a fiduciary duty on Prudential.

Even if Prudential made numerous changes to the mutual funds included within the Plan – and, at this stage of the proceeding, the Court must accept these allegations as true, *see Iqbal,* 556 U.S. at 678 – the Trust Agreement vested authority in Prudential to do so only after notifying and receiving the consent of Ferguson.  *See* Trust Agreement § 3(a).  Indeed, ERISA only confers fiduciary status "to the extent" that a party "has or exercises the described authority or responsibility."  *Harris Trust*, 302 F.3d at 28 (quoting *F.H. Krear*, 810 F.2d at 1259). Consistent with these principles, Prudential lacked the necessary authority over the selection of mutual funds to be a fiduciary under ERISA.  *Id.* (finding that an act was not an "exercise of 'discretionary authority' over the Plan and therefore did not implicate its fiduciary duties under ERISA").

In the alternative, Plaintiffs argue that Prudential retained discretionary authority to determine its own compensation, and thus Prudential has fiduciary status in connection with the revenue-sharing arrangements.  Pls. Mem. in Opp. to Prudential Mot. to Dismiss at 14.   A service provider to an ERISA plan may have fiduciary status where it retains contractual authority to adjust its own compensation and the compensation is not concretely defined in the

agreed-upon terms of the Plan.  *See F.H. Krear,* 810 F.2d at 1259 ("the agreement may give [defendant] such control over factors that determine the actual amount of its compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation").

This allegation, too, is contradicted by the clear language of the governing contractual agreements.  The Trust Agreement strips Prudential of its discretionary authority over its own compensation, limiting Prudential's compensation to "the fee schedule provided to the Employer" and requiring advance notice to the Employer of any changes to the agreed-upon schedule.  Trust Agreement § 7.  Thus, this argument is unavailing.

Finally, Plaintiffs argue that Prudential breached fiduciary duties and engaged in prohibited transactions by (1) administering its GoalMaker product to steer Plan assets into proprietary funds and higher-cost investment options without fully disclosing the details of that program, and (2) participating in prohibited securities lending activities.  Pls. Mem. in Opp. to Prudential Mot. to Dimsiss at 39.  These claims, however, are not sufficiently pled and are similarly contradicted by the record.  The documents referenced in the Amended Complaint demonstrate that Prudential disclosed relevant details with respect to its GoalMaker program, and the contractual agreement in place regarding the GoalMaker program confirms that Ferguson, not Prudential, was ultimately responsible for the investment selections with respect to this program.  GoalMaker Contract at 1, VerGow Dec. Ex. B., ECF No. 68.  Furthermore, Plaintiffs have not pled any facts regarding alleged securities lending activities beyond the repeated conclusory assertion that Prudential "engage[d] in securities lending activities with third parties."  Am. Compl. at ¶¶ 60, 66, 84, 123; *see Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

The Trust Agreement thus demonstrates that Prudential did not possess the authority to be considered a fiduciary under ERISA.  Accordingly, Prudential cannot be held liable under ERISA for breach of fiduciary duties or prohibited transactions with respect to its selection of investment options, determination of compensation, administration of the GoalMaker program, or alleged securities lending activities.  Plaintiffs have failed to plausibly plead any ERISA violations with respect to these activities, and any related claims are dismissed for failure to state a claim.

### 3.  Separate Accounts and Trusts

Although Prudential's arguments in support of its motion to dismiss focus mainly on its own lack of discretionary authority with respect to the investment options offered to the Plan and the investment selections made by Ferguson, the majority of Plaintiffs' allegations against Prudential relate to Prudential's discretionary authority over the Separate Accounts and Trusts. Am. Compl. at ¶¶ 37-56, 68-87.  Specifically, Plaintiffs allege that Prudential used its contractual authority over these particular investment vehicles to negotiate revenue-sharing payments from mutual funds, thereby increasing the expense ratios of those mutual funds at the expense of the Plan and its participants.  *Id*. at ¶¶ 8, 12.

As discussed above, the Trust Agreement in place between Prudential Trust and Ferguson does not vest Prudential with discretionary authority over Plan assets as required to establish fiduciary status.  *See Harris Trust*, 302 F.3d at 28 (finding that company's disputed activities with respect to pension plan did not constitute an "exercise of 'discretionary authority' over the Plan and therefore did not implicate its fiduciary duties under ERISA").   The Trust Agreement, however, is not the only contract governing Prudential's authority over Plan assets, and, according to Plaintiffs, Prudential still had and exercised enough managerial or administrative

authority over the Separate Accounts to be considered a fiduciary at this stage of the litigation. Pl. Mem. in Opp. to Prudential Mot. to Dismiss at 2-3.

First, Plaintiffs argue that Prudential has fiduciary status through its ownership and management of Separate Accounts – group variable annuities owned by PRIAC that contain some assets contributed by Plan participants.  These accounts are governed by the Group Annuity Contract between Ferguson and PRIAC, the alleged "alter-ego" of Prudential Trust. This contract explicitly provides that "[t]he Insurance Company [PRIAC, or Prudential] will invest or reinvest Separate Account E assets at its sole discretion."  Group Annuity Contract at R20.1 Separate Account E Rider.  Plaintiff argues that this explicit delegation of discretionary authority is sufficient to make Prudential a fiduciary with respect to its management of any Plan assets contained in the Separate Accounts.

Where an ERISA service provider possesses and exercises managerial authority over plan assets, a finding of fiduciary status is appropriate.  *See Healthcare Strategies, Inc.*, 2012 WL 10242276 at *4 (fiduciary duties may be established under ERISA "to the extent that a person or entity exercises discretionary authority or discretionary control respecting management of a covered plan or has discretionary authority or responsibility in the administration of a covered plan").  Under ERISA, management authority "refers to the common transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on."  *Harris Trust*, 302 F.3d at 28 (internal citations omitted).  Plaintiffs have specifically alleged that Prudential exercised its management authority over the Separate Accounts by "negotiat[ing] revenue sharing or participation agreements with the mutual funds"; "sell[ing] and purchas[ing] mutual fund shares to hold in the Separate Accounts (and receiv[ing] revenue sharing kickbacks in return for these purchases)"; and "electing to receive dividends from the mutual funds into the

Separate Accounts in the form of additional mutual funds shares and/or making the affirmative decision to reinvest all cash dividends from mutual funds in additional mutual fund shares of the same mutual funds." Am. Compl. at ¶ 45, 54, 57.  Taken as true, these allegations suggest that Prudential both possessed and exercised discretionary authority over Separate Accounts sufficient to support a finding of fiduciary status at this stage.

The documentation submitted in connection with Prudential's Motion to Dismiss, however, suggests that Plaintiffs' allegations regarding the Separate Accounts are not plausible. *See Twombly,* 550 U.S. at 570 (requiring pleadings to include "enough facts to state a claim to relief that is plausible on its face").  Prudential contends that it did not invest any Plan assets in mutual funds through these accounts, thus its authority over the Separate Accounts is immaterial. Prudential Reply Br. at 7-9, 11-12.   In support of this contention, Prudential submits over 1,000 pages of public Form 5500 filings, listing each of the investments made by Prudential's Separate Accounts.  Form 5500s, Prudential Mem. in Supp. Ex. E-F, ECF Nos. 63-8 – 63-11.  These judicially noticeable documents confirm Prudential's assertion that, contrary to Plaintiffs' allegations, Prudential did not actually invest any Separate Account assets in mutual funds.  *Id.* Plaintiffs conceded this point at oral argument and have suggested that the Separate Accounts themselves are "clones of mutual funds" and that there are other sorts of "indirect payments being made to Prudential from third parties" in connection with Separate Account investments. 11/03/2016 Hr'g. Tr. at 50, ECF No. 100.

Prudential rightly states that its ownership and managerial authority over assets held in group variable annuities, standing alone, may not be sufficient to confer fiduciary status unless that authority was actually exercised with respect to those funds.  *See Charters v. John Hancock Life Ins. Co*., 583 F.Supp.2d 189, 197 (D. Mass. 2008) (finding it "unlikely that [defendant

insurance company]'s issuance of variable annuity contracts and the retention of assets in a separate account is alone sufficient to confer fiduciary status" and declining to address the question of "whether issuing variable annuity contracts would alone be sufficient" for such status); *Healthcare Strategies, Inc.,* 2012 WL 10242276 at *4 n.4 (declining to decide whether ownership of group variable annuities alone was sufficient to find fiduciary status, citing *Charters,* 583 F.Supp.2d at 197).

Plaintiffs have also made numerous factual allegations suggesting that Prudential not only possessed authority over these Separate Account funds, but also exercised that authority to engage in revenue-sharing transactions with mutual funds and like instruments.  Am. Compl. at ¶ 45, 54, 57.  Although these allegations are contradicted by the Form 5500s submitted by Prudential with respect to the alleged mutual fund investments, *see* Prudential Mem. in Supp. Ex. E-F, Plaintiffs' remaining allegations that Prudential engaged in revenue-sharing with similar instruments are not so clearly contradicted by the record.  Taken as true, Plaintiffs' allegations create a factual dispute with respect to the Separate Accounts only, which, if material to Plaintiffs' claims, would not be appropriate for resolution on a motion to dismiss.

Prudential's participation in revenue-sharing transactions through its management of the Separate Accounts, however, is not a material dispute with respect to Plaintiffs' claims against Prudential.  Even assuming that Plaintiffs have pled facts sufficient to demonstrate fiduciary status as to Prudential with respect to the Separate Accounts, the alleged transactions, without more, do not constitute prohibited transactions or a breach of fiduciary duty under ERISA.

ERISA provides that a fiduciary cannot be held liable for a breach of fiduciary duty unless its actions are found to be imprudent.  29 U.S.C. § 1104(a).  ERISA's prudence requirement has traditionally focused on the "process involved in making decisions for a plan"

rather than whether the ideal result was reached, and parties are generally shielded from fiduciary liability if a "hypothetical prudent fiduciary" would have reached the same decision. Jayne E. Zanglein, Lawrence A. Frolik, & Susan J. Stabile, *ERISA Litigation* 1057 (4th Ed. 2011); *see also In re Meridian Funds Grp. Sec. & Employee Ret. Income Sec. Act (ERISA) Litig.*, 917 F. Supp. 2d 231, 240 (S.D.N.Y. 2013) (under ERISA, "prudence is measured against hypothetical sophisticated and prudent investment professionals"); *Amgen Inc. v. Harris*, 136 S. Ct. 758, 760 (2016) (requiring courts to consider "whether the complaint in its current form has plausibly alleged that a prudent fiduciary in the same position could not have concluded that the alternative action would do more harm than good" when evaluating breach of fiduciary duties claim under ERISA (internal marks and citations omitted)).

This standard does not require Prudential to maximize returns to Plan participants, or to "scour the market to find and offer the cheapest possible fund." *Hecker v. Deere & Company*, 556 F.3d 575, 586 (7th Cir. 2009). In fact, "ERISA does not guarantee substantive benefits. The statute, instead, seeks to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures." *See Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016) (citing *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 651 (1995)). Plaintiffs have not identified any case law suggesting that ERISA gives Plan participants a statutory right to fees below a certain level, or holding that ERISA requires Plan fiduciaries to make investment decisions that ideally benefit Plan participants.

Even if Plaintiffs are correct in their assertion that Plan participants would have earned more returns had Prudential not engaged in revenue-sharing through its management of Separate Accounts, according to the law in this Circuit, a service provider who adheres to the agreed-upon

terms of an employee retirement plan is not bound to deviate from those terms against its own interests simply because doing so could result in more gains to plan participants. *See Harris Trust,* 302 F.3d at 28 ("A plan administrator must be permitted to consider its own legitimate business interests when deciding whether to gratuitously grant a request by a plan trustee, particularly when the request diverges from the terms agreed to by the parties"). Rather, in order to determine whether Prudential, as a fiduciary with respect to the Separate Accounts, exercised its fiduciary duties imprudently, the relevant inquiry is straightforward: under the circumstances then prevailing, what would a prudent fiduciary have done.

Here, both parties acknowledge that revenue-sharing is a common practice in this industry. H'g Tr. at 61-62. Furthermore, courts across the country have generally found that the practice of revenue-sharing does not, in principle, constitute an ERISA violation. *See Hecker,* 556 F.3d at 585 (affirming the district court's decision that a fee-sharing arrangement did not violate ERISA); *Tussey v. ABB, Inc.,* 746 F.3d 327, 336 (8th Cir.), *cert. denied,* 135 S. Ct. 477 (2014) (affirming the district court's decision and clarifying that "[t]he district court did not condemn bundling services or revenue sharing, which are common and 'acceptable' investment industry practices that frequently inure to the benefit of ERISA plans."); *Renfro v. Unisys Corp.,* No. CIV.A.07-2098, 2010 WL 1688540, at *7 (E.D. Pa. Apr. 26, 2010), *aff'd,* 671 F.3d 314 (3d Cir. 2011) (holding that "failure to disclose information about revenue sharing among the Fidelity Defendants cannot form the basis of an ERISA breach of fiduciary duty claim"); *Taylor v. United Techs. Corp.,* No. 3:06-CV-1494 (WWE), 2009 WL 535779 at *11 (D. Conn. Mar. 3, 2009), *aff'd,* 354 F. App'x 525 (2d Cir. 2009) (dismissing ERISA claims based on revenue-sharing fees where "plaintiffs have failed to proffer evidence evincing that [defendant]'s receipt

of its negotiated base fee and sub-transfer agent fees was materially unreasonable and beyond the market rate").

Plaintiffs' allegations that Prudential engaged in revenue sharing, without more, do not state a claim for a violation of ERISA. "Because the fiduciary's obligation is to exercise care prudently and with diligence 'under the circumstances then prevailing,' his actions are not to be judged 'from the vantage point of hindsight.'" *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006) (citing 29 U.S.C. § 1104(a)(1)(B); *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984)). The Amended Complaint contains no factual allegations suggesting that similarly situated service providers would have engaged in revenue-sharing any differently than Prudential was alleged to have done during the relevant time frame.

Even if Plaintiffs could point to alternative compensation models better than the challenged revenue-sharing framework practiced by Prudential, the Complaint fails to allege how, in light of the circumstances present at the time of the alleged conduct, Prudential's decision to engage in revenue-sharing is any different from what a prudent fiduciary would have done. *Pension Ben. Guar. Corp. ex rel St. Vincent Catholic Medical Ctr. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 723 (2d Cir. 2013) (dismissing ERISA claims based on lack of specificity in Amended Complaint where, "[r]ather than alleging any factual matter about how a prudent investor would have viewed the Portfolio's securities at the relevant times, and in the relevant circumstances, the Amended Complaint simply ignores the issue").

Viewing the factual allegations in the Amended Complaint as true, Plaintiffs have failed to establish that Prudential had fiduciary status with respect to the vast majority of Plan assets. To the extent that Prudential acted as a fiduciary with respect to Separate Accounts and

Collective Trusts, Plaintiffs have failed to allege facts suggesting a breach of fiduciary duty or engagement in prohibited transactions in connection with those accounts. Accordingly, Prudential's motion to dismiss is granted as to Count One of the Complaint.

### 4. Co-Fiduciary Liability and Breach of Trust

In Count Two of the Amended Complaint, Plaintiffs include a claim for "co-fiduciary breach," adding a general assertion that, "to the extent that Prudential or any of the Ferguson Defendants are not deemed fiduciaries or co-fiduciaries under ERISA, any such Defendant is liable… for all recoverable damages and relief as a non-fiduciary that knowingly participated in a breach of trust." Am. Compl. at ¶¶ 150-151. These allegations similarly fail to state a valid claim.

As a preliminary matter, only a fiduciary can be held liable as a co-fiduciary. *See* 29 U.S.C. § 1105(a) (outlining the circumstances under which "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan"). Even when a non-fiduciary participates in a fiduciary's breach of duty, that non-fiduciary may not be held liable for money damages. *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) (holding that ERISA does not authorize suits for money damages against non-fiduciaries who knowingly participate in a breach of fiduciary duty). Plaintiffs are seeking money damages here. Am. Compl. ¶ 134 (requesting "legal and/or equitable monetary relief"); Hr'g Tr. at 39 (explaining that the "core remedy from Prudential" was "disgorgement of the revenue sharing payments" and seeking "[a]s an alternative remedy… the profits associated with the revenue sharing").

As discussed above, Prudential is only a fiduciary with respect to its ownership and control over the Separate Account assets, and it did not breach its fiduciary duties in connection

with those accounts.  As described in further detail below, although Ferguson and CapFinancial are both Plan fiduciaries, neither Ferguson nor CapFinancial breached its fiduciary duties based on the conduct alleged in the Amended Complaint.  Without an underlying breach of fiduciary duty or breach of trust on the part of a Plan fiduciary, Prudential cannot be held liable for a knowing participation in a breach of trust.  *See Phones Plus, Inc. v. The Hartford Fin. Servs. Grp., Inc.*, No. 3:06-cv-01835 (AVC), 2007 WL 3124733, at *5 (D. Conn. Oct. 23, 2007) (explaining that the elements for a knowing participation in a breach of trust claim are "1) breach by a fiduciary of a duty owed to plaintiff, 2) defendant's knowing participation in the breach, and 3) damages" (internal citations omitted)).  Accordingly, Count Two of the Amended Complaint is dismissed as to Prudential.

### B.   "Ferguson Defendants" (Ferguson and CapFinancial)

Plaintiffs claim that Ferguson and CapFinancial breached their fiduciary duties to the Plan under ERISA by failing to ensure that the expenses associated with the funds offered for investment in the Plan were "fair and reasonable."  Am. Compl. at ¶ 102.  The allegations against Ferguson and CapFinancial are narrower and fewer in number than those brought against Prudential, focusing exclusively on (1) the concentration of high-cost mutual funds among the investment options in the Plan, (2) the inclusion of Prudential's "GoalMaker" product within the Plan offerings without making full disclosures regarding the nature of that program, and (3) the failure to monitor Prudential's investments of Plan assets in mutual funds and other instruments in exchange for revenue-sharing payments.  *Id*. at ¶¶ 102-106.  Plaintiffs also claim that Ferguson and CapFinancial are liable for breaching their duties as co-fiduciaries to one another and to Prudential.  *Id*. at ¶¶ 150-151.

Unlike Prudential, Ferguson and CapFinancial both admit that they have fiduciary responsibilities to the Plan.  Ferguson Mem. in Supp. at 2; CapFinancial Mem. in Supp. at 4. Ferguson, as the employer and plan sponsor, entered into the contractual agreements with Prudential which defined the Plan and approved the final menu of investment options. CapFinancial, as Ferguson's selected investment advisor, helped guide Ferguson in its decision to ultimately engage Prudential as the service provider for the Plan and agree to the terms at issue.  In two separate motions to dismiss, Ferguson and CapFinancial argue that Plaintiff's Amended Complaint (1) impermissibly groups Ferguson and CapFinancial together without specifying each defendant's role in selecting the funds offered in the Plan; (2) fails to plead the requisite facts demonstrating that a prudent fiduciary would have acted any differently; (3) fails to state a claim of excessive fees under ERISA because the Plan offered a variety of investment options with a legally sufficient range of expense ratios; and (4) fails to state a claim for failure to monitor and breach of co-fiduciary duty.  *See* Ferguson Mem. in Supp.; CapFinancial Mem. in Supp.

For the reasons outlined below, Plaintiffs' claims as to Ferguson and CapFinancial are dismissed under Rule 12(b)(6).

### 1.  Group Pleading as to CapFinancial

Both Ferguson and CapFinancial note that the Amended Complaint groups the two defendants together without distinguishing their conduct.  Ferguson Mem. in Supp. at 5; CapFinancial Mem. in Supp. at 1.  CapFinancial specifically argues that Plaintiff's claims against it should be dismissed based on this "group pleading" because the Amended Complaint fails to provide CapFinancial with adequate notice as to what they did wrong.  CapFinancial Mem. in Supp. at 4.

"Fed. R. Civ. P. 8 requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Medina v. Bauer*, No. 02 CIV. 8837 (DC), 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (citing *Ferro v. Ry. Express Agency, Inc*., 296 F.2d 847, 851 (2d Cir.1961)); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). Dismissal of a complaint may be appropriate where the plaintiff "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct." *Id*. However, dismissal is not warranted based on a "group pleading argument" where "the claims… and the grounds upon which they rest, are clear from the complaint." *Gao v. JPMorgan Chase & Co*., No. 14 CIV. 4281 PAC, 2015 WL 3606308, at *6 (S.D.N.Y. June 9, 2015).

Plaintiffs' allegations against CapFinancial and Ferguson are brief, limited to only 5 paragraphs out of the 151 paragraphs in the Amended Complaint. They are also rather general, and the two entities are consistently referenced together as "Ferguson Defendants." Despite the concise nature of these allegations, however, Plaintiffs have sufficiently specified which claims are being brought against CapFinancial, as well as the basic factual allegations associated with those claims.

The Amended Complaint clearly defines CapFinancial's role as "provid[ing] investment advice to the Administrator of the Plan." Am Compl. at ¶ 26. The Amended Complaint further describes both CapFinancial and Ferguson as having created a situation in which "the expenses associated with the investments in the Plan are grossly excessive, because the investment options made available to the Plan's participants, at all pertinent times, have been focused upon expensive and unsuitable actively managed mutual funds." *Id*. at ¶ 103. These allegations are sufficient to provide CapFinancial with reasonable notice that Plaintiffs are bringing breach of

fiduciary duty and co-fiduciary claims against it based on its advisory role in Ferguson's decisions to include a concentration of actively-managed mutual funds in the Ferguson Plan. As a result, these allegations are sufficient to defeat CapFinancial's "group pleading" arguments, and dismissal is therefore not warranted on this ground.

## 2. Standing

Both Ferguson and CapFinancial argue that Plaintiffs lack standing to bring their claims. Ferguson specifically argues that dismissal is warranted based on Plaintiffs' failure to allege that Plaintiffs personally invested in the actively-managed mutual funds. Ferguson Mem. in Supp. at 7. Both Ferguson and CapFinancial further argue that, because Plaintiffs never specifically claimed that they used the contested "GoalMaker" product offered as one of the options within the Plan, Plaintiffs lack standing to charge either Defendant with a breach of fiduciary duty based on the failure to disclose the true nature of that particular product. *Id*. at 12-13; CapFinancial Mem. in Supp. at 2.

ERISA permits an individual participant in a retirement savings plan to initiate litigation on behalf of the plan and other participants. 29 U.S.C. § 1132(a)(2) (allowing for "a participant" to bring a civil action "for appropriate relief" under ERISA); *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) (explaining the purpose of the ERISA enforcement statute and describing "Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole"). Generally, a plaintiff has standing to bring an ERISA claim where the plaintiff alleges a causal connection between defendants' actions and actual harm to an ERISA Plan in which the plaintiff participates. *See LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 256 (2008) (recognizing that § 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries"); *see also Braden*

*v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592-593 (8th Cir. 2009) (finding that Plan participant had standing to bring broad ERISA claim and concluding that a plaintiff may seek relief under ERISA "that sweeps beyond his own injury"). As Plaintiffs have alleged that the costly investment options offered by Ferguson and CapFinancial caused harm to their Plan assets, the Court concludes that Plaintiffs have standing to bring their claims and dismissal is not warranted on this basis.

### 3.  Concentration of Actively-Managed Mutual Funds

The remainder of the arguments presented by Ferguson and CapFinancial challenge the legal sufficiency of Plaintiffs' claim that the concentration of higher-cost, actively-managed mutual funds in the Ferguson Plan constitutes a breach of fiduciary duty.   First, Ferguson and CapFinancial both claim that dismissal is warranted because Plaintiffs (a) failed to identify any flaws in the process or methods used by either Ferguson or CapFinancial to select the final investment options, and (b) failed to indicate how a prudent fiduciary would have reached a different result.  Second, they argue that the concentration of mutual funds challenged by Plaintiffs does not, as a matter of law, constitute a breach of fiduciary duty under ERISA because the Plan includes a sufficient mix of investment options with a sufficiently wide range of expense ratios.

Ferguson and CapFinancial first assert that Plaintiffs' claims against them lack the specificity required to survive a motion to dismiss.  Ferguson Mem. in Supp. at 7; CapFinancial Mem. in Supp. at 5.  Both parties rely on the Second Circuit's ruling in *Pension Ben. Guar. Corp. ex rel St. Vincent Catholic Medical Ctr. v. Morgan Stanley*, which outlines the factual pleading standards under ERISA.  712 F.3d 705 (2d Cir. 2013).

Under *Pension Benefit*, in order to survive a motion to dismiss, an ERISA plaintiff claiming a breach of fiduciary duty must allege facts sufficient for the court to "reasonably 'infer from what is alleged that the process was flawed.'" *Id*. at 718 (citing *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 598 (8th Cir. 2009)).  However, acknowledging that "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences," *id*., the court explained that "circumstantial factual allegations" may be sufficient to state a claim for breach of fiduciary duty under ERISA even without specific information regarding the "methods employed by the ERISA fiduciary to investigate, select, and monitor investments." *Id*. at 727.  "Accordingly, a claim for a breach of fiduciary duty under ERISA may survive a motion to dismiss—even absent any well-pleaded factual allegations relating directly to the methods employed by the ERISA fiduciary—if the complaint 'allege[s] facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.'" *Id*. at 718 (quoting *In re Citigroup ERISA Litig.*, 662 F.3d 128, 141(2d Cir. 2011)).

Here, Plaintiffs have not made any allegations directly addressing the methods used by Ferguson and CapFinancial to select investment options for the Plan.  Instead, the Amended Complaint includes detailed allegations regarding the size of the Plan, the layers of fees and the revenue-sharing arrangements involved with the mutual funds selected, as well as general allegations regarding the higher costs associated with actively-managed mutual funds as opposed to "passive" funds or "index" funds.  Am. Compl. at ¶¶ 102-106.  Plaintiffs argue that these allegations sufficiently support the inference that, with an adequate investigation, a reasonable fiduciary would have known that the investment options were imprudent.  However, under the standards set forth in *Pension Benefit*, general allegations regarding the cost of selected

investments do not demonstrate that those investments were imprudent, or that a prudent fiduciary would have decided any differently under the circumstances, and thus they fail to state an ERISA claim as a matter of law. *Pension Benefit ex rel. St. Vincent Catholic Med. Centers Ret. Plan,* 712 F.3d at 718 ("if the complaint relies on circumstantial factual allegations to show a breach of fiduciary duties under ERISA, those allegations must give rise to a 'reasonable inference' that the defendant committed the alleged misconduct").

Plaintiffs compare this case to *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), an ERISA case from a different Circuit involving similar allegations against retirement plan fiduciaries who invested plan assets in high-cost mutual funds. In *Braden*, the Eight Circuit reversed the district court's dismissal of the complaint, finding that the facts alleged, though indirect, were sufficient to support an inference of misconduct on the part of the defendants. *Id.* at 598. However, the allegations in Plaintiffs' Amended Complaint fall far short of the specificity provided in *Braden*. While the underlying claims in the two cases are very similar, Mr. Braden not only included allegations regarding the size of the plan and the number of funds charging excessive fees, but also included allegations that the challenged funds "underperformed lower cost alternatives" and provided "specific comparisons of each Plan fund to an allegedly similar but more cost effective fund available in the market." *Id.* at 590. The Plaintiffs here make no such allegations, instead stating broadly that the concentration of mutual funds imposes unwanted expenses on Plan participants without including any factual allegations regarding the availability of lower-cost alternatives.[3]

---

[3] Plaintiffs advance a policy argument that ERISA plaintiffs lack access to the information needed to plead with more specificity at this early stage of the litigation. Pls. Mem. in Opp. to CapFinancial Mot. to Dismiss at 11-12. However, this argument is unavailing, as it was explicitly addressed and rejected in *Pension Benefit*. There, the Second Circuit specified that "ERISA imposes extensive disclosure requirements on plan administrators, thus giving

Based on the case law in this Circuit and other Circuits, the alleged concentration of high-cost mutual funds here, without more, is not sufficient to state a claim against Ferguson and CapFinancial for breach of fiduciary duty. *See, e.g., Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011); *Taylor v. United Technologies Corporation*, 354 F.App'x 525 (2d Cir. 2009); *Hecker v. Deere & Company*, 556 F.3d 575 (7th Cir. 2009). Courts have repeatedly found that allegations of a high concentration of mutual funds, standing alone, are not sufficient to state a valid ERISA claim, particularly where the offered funds involve a reasonable mix and range of expense ratios and the pleadings fail to specify how the higher-cost funds would have been known to be imprudent investments. *See Taylor v. United Techs. Corp.*, No. 3:06-CV-1494 (WWE), 2009 WL 535779 at *10 (D. Conn. Mar. 3, 2009), *aff'd*, 354 F. App'x 525 (2d Cir. 2009) (finding that the presence of a high concentration of mutual funds with revenue-sharing arrangements did not violate ERISA as a matter of law, despite expert evidence in support of the notion that "actively-managed mutual funds generally underperform passive index funds" and that "less-costly managed separate trust accounts outweigh the advantages of mutual funds," because "plaintiffs have not addressed the imprudence of selecting any particular actively-managed mutual funds").

The concentration of mutual funds in the Ferguson Plan, without more, does not support a finding that Ferguson and CapFinancial breached their fiduciary duties under ERISA. As of October 2014, the Ferguson Plan was offering sixteen total investment options, fourteen of which were mutual funds. Pl. Mem. in Opp. to Ferguson Mot. to Dismiss at 5; Pls. Mem. in Opp. to CapFinancial Mot. to Dismiss at 5. Of these fourteen mutual funds, eleven were actively-managed and three were passively-managed. *Id*. Taken as a whole, the total menu of

---

plan beneficiaries (*i.e.*, prospective plaintiffs) the opportunity to find out how the fiduciary invested the plan assets." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan*, 712 F.3d at 720.

investment options resulted in expense ratios ranging from 0.04% to 1.02%.  *Id.*  Despite the relatively small number of total offerings, this Plan offered a far wider "mix and range" than those approved in both *Hecker* and *Renfro*.  *See Hecker*, 556 F.3d 575 (no excessive fees where expense ratios ranged from 0.07% to just over 1%); *Renfro*, 671 F.3d 314 (no excessive fees where expense ratios ranged from 0.1% to 1.21%).

Furthermore, as Ferguson and CapFinancial point out in their filings, the Ferguson Plan did include several investment options that were made available to Plan participants as alternatives to the higher-cost actively-managed mutual funds complained of, including a Vanguard Institutional Index Fund, a Group Fixed Annuity option and a Prudential Stable Value option.  Pls. Mem. in Opp. to Ferguson Mot. to Dismiss at 4.  Plaintiffs do not discuss these lower-cost options in any depth in their opposition briefs, and the Amended Complaint does not include any facts suggesting that the inclusion of these lower-cost passively-managed mutual funds and index funds are insufficient alternatives to the funds with allegedly excessive fees. The inclusion of these lower-cost alternatives undermines Plaintiffs' assertions that Ferguson and CapFinancial breached their fiduciary duties by charging excessive fees.

Plaintiffs seek to establish an ERISA violation based on its belief that the "concentration of the actively-managed mutual funds in such a small menu of investment options, with a lack of lower-fee index funds provided as alternatives, is imprudent and imposes unwanted expenses upon Plan participants who would otherwise opt for lower-fee index funds."  Pls. Mem. in Opp. to CapFinancial Mot. to Dismiss at 22.  Plaintiffs, however, have failed to plead sufficient facts that would support a plausible inference that Ferguson or CapFinancial violated their fiduciary duties through this concentration of actively-managed mutual funds alone, particularly where, as here, the Plan ultimately offered a variety of investment options that included low-cost options

31

with expense ratios as low as 0.04%. Accordingly, Plaintiffs' claims against Ferguson and

CapFinancial based on the concentration of actively-managed mutual funds are dismissed.

### 4.  Failure to Disclose Information Regarding GoalMaker

In addition to the allegations against Ferguson and CapFinancial in connection with

allegedly excessive fees, Plaintiffs also claim that Ferguson and CapFinancial breached their

fiduciary duties by "including GoalMaker in the Plan without adequately disclosing its true

nature to participants." *Id*. at ¶ 106.  Ferguson argues that these claims should be dismissed

because, in accordance with its disclosure requirements under ERISA, it provided Plaintiffs with

detailed information regarding the exact investments included within GoalMaker along with

information pertaining to the fees involved with each of these investments.  Plan Overview,

Ferguson Ex. 2 at 4-8, 10; Ferguson Mem. in Supp. at 13; CapFinancial Mem. in Supp. at 13.  It

is undisputed that the GoalMaker program was optional for Plan participants, and it did not offer

any investment selections that were not already included in the broader menu of investment

options.

Plaintiffs' Amended Complaint, however, does not include any allegations regarding the

prudence or imprudence of Ferguson and CapFinancial's actions in connection with the

GoalMaker product.  Accordingly, Plaintiffs' GoalMaker allegations fail to state a claim for

breach of fiduciary duty.  *See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med.*

*Centers Ret. Plan,* 712 F.3d at 723 ("such imprecise pleading is particularly inappropriate here,

where the plaintiffs necessarily have access, without discovery, to plan documents and reports

that provide specific information from which to fashion a suitable complaint").  All claims

against Ferguson and CapFinancial in connection with the GoalMaker product are dismissed.

### 5.  Failure to Monitor Prudential

Plaintiffs' Amended Complaint states briefly that "the Ferguson Defendants have engaged in significant breaches of fiduciary duty by … failing to monitor the conduct of Prudential."  Am. Compl. at ¶ 106.  Beyond this conclusory phrase, Plaintiffs do not specify any actions that either Ferguson or CapFinancial failed to take, nor do they include any factual allegations in support of this claim.  *See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan,* 712 F.3d at 719 (noting that, even before discovery is initiated in an ERISA case, "an ERISA plan participant, beneficiary, or fiduciary with a meritorious claim will still be able to allege facts plausibly showing that an ERISA fiduciary should have been aware that the relevant investment decisions did not satisfy ERISA's fiduciary standards").  As Plaintiffs have failed to plausibly plead any ERISA violations on the part of Prudential, Ferguson and CapFinancial cannot be held liable for failing to monitor Prudential's conduct, and Plaintiffs' "failure to monitor" allegations fail to state a valid claim under ERISA.

### 6.  Co-Fiduciary Liability and Breach of Trust

Finally, Count Two of Plaintiffs' Amended Complaint alleges that, "to the extent that … any of the Ferguson Defendants are not deemed fiduciaries or co-fiduciaries under ERISA," Plaintiffs are entitled to damages for a "knowing breach of trust."  Am. Compl. at ¶ 151. Because both Ferguson and CapFinancial do not contest their status as fiduciaries, Plaintiffs' claim for non-fiduciary breach of trust as to Ferguson and CapFinancial is dismissed.

In order to find a breach of co-fiduciary duty, the Court must first find "knowing participation" in other fiduciaries' breaches.  *See Leber v. Citigroup, Inc*., 07 Civ. 9329 (SHS), 2010 WL 935442 at *14 (S.D.N.Y. Mar. 16, 2010).  "Knowing participation turns on a showing that defendants (1) knew of the primary violator's status as a fiduciary and (2) knew that the

primary violator's conduct contravened a fiduciary duty." *Id.* (citing *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 282-82 (2d Cir. 1992). Plaintiffs do not make any allegations that either Ferguson or CapFinancial acted with the requisite knowledge to find a breach of co-fiduciary duty based on their status as co-fiduciaries to one another or as co-fiduciaries to Prudential. Accordingly, Count Two of the Amended Complaint is dismissed as to Ferguson and CapFinancial.

## IV.  LEAVE TO AMEND

Plaintiffs have already been given an opportunity to amend their Complaint in this matter. *See* Stipulation re: Leave to File Am. Compl., ECF No. 31. After filing their initial Complaint in December 2015, Plaintiffs engaged in further discussions with Prudential and reviewed additional documentation pertaining to the Plan, and Plaintiffs filed an Amended Complaint in April 2016 in light of their review. *Id.*; Am. Compl.; Prudential Mem. in Supp. at 2, 31. "Where it appears that granting leave to amend is unlikely to be productive… it is not an abuse of discretion to deny leave to amend." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993)).

The Court finds that, in light of the legal insufficiencies discussed above in connection with Plaintiffs' claims, further amendment of the Amended Complaint would be futile. At oral argument, Plaintiffs described this case as part of a series of cases intended to move the "entire industry… more and more to zero revenue sharing," based on the notion that "zero revenue sharing is much less expensive for plans and for participants." Hr'g Tr. at 77. These goals, however worthwhile they may be, are not compatible with the purposes of ERISA.

While Plaintiffs seek to transform the market itself by challenging the very framework of revenue sharing in this industry, ERISA protects plan participants' reasonable expectations in the

context of the market that exists.  *See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan,* 712 F.3d 705 (analyzing breach of fiduciary duty claims in context of marketplace at the time of the alleged breach); *Chao*, 452 F.3d, 182 (noting that the fiduciary obligation under ERISA is to be evaluated "under the circumstances then prevailing" and stating that, "so long as the 'prudent person' standard is met, ERISA does not impose a duty to take any particular course of action if another approach seems preferable" (internal citations and marks omitted)).  Plaintiffs' claims, therefore, are unlikely to succeed even with additional amendments to the pleadings.

Accordingly, Plaintiffs will not be granted an additional opportunity to amend their Complaint in this matter.

**V.   CONCLUSION**

Prudential's [63] Motion to Dismiss is **GRANTED**.  Ferguson's [65] Motion to Dismiss is **GRANTED**, and CapFinancial's [62] Motion to Dismiss is **GRANTED**.   All Counts are dismissed with prejudice as to each Defendant.  The Clerk of the Court is directed to enter judgment for Defendants and close this case.


SO ORDERED at Bridgeport, Connecticut this 30th day of December, 2016.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE
