UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of October, two thousand seventeen.

PRESENT: DENNIS JACOBS,
         JOSÉ A. CABRANES,
         RICHARD C. WESLEY,
              Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X
Richard A. Rosen,
       Plaintiff-Appellant,

       -v.-                              17-0239-cv

Prudential Retirement Insurance and
Annuity Company,
       Defendants-Appellees.
- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:      James E. Miller
                    Laurie Rubinow, Nathan C. Zipperian
                    Shepherd, Finkelman, Miller &
                    Shah, LLP, Chester, Connecticut

1

|  |  |
|---|---|
|  | Monique Olivier<br>Duckworth Peters<br>Lebowitz Olivier LLP, San Francisco, California |
| **FOR APPELLEES:** | James T. Shearin<br>Pullman & Comley, Bridgeport, Connecticut |
|  | Catherine M.A. Carroll<br>Kevin M. Lamb<br>Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC |

Appeal from a judgment of the United States District Court for the District of Connecticut(Bolden, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Richard Rosen appeals from the judgment of the United States District Court for the District of Connecticut, dismissing his ERISA complaint alleging breach of fiduciary duty by the sponsor and administrator, service provider, and investment advisor of the employer retirement plan in which Rosen participates. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Ferguson Enterprises ("Ferguson"), with the aid of investment advisor CapFinancial Partners LLC ("CapFinancial"), selected Prudential Bank & Trust FSB and Prudential Retirement Insurance and Annuity Company (together "Prudential") as the service provider for its 401(k) plan (the "Plan"). Before appointing Prudential, Ferguson and CapFinancial had agreed on the investment menu and the terms that govern the management of Plan assets, and arranged that Prudential would be compensated by fees paid directly from the plans it manages or indirectly through revenue-sharing arrangements entered into between Prudential and the mutual funds.

Two investment vehicles are at issue.

- Prudential and Ferguson established the Ferguson Enterprises, Inc. Retirement Savings Plan Trust

>  (the "Trust") by entering into the Trust Agreement, which provides that Prudential is the "directed trustee" responsible for holding, managing, and investing the Trust "in accordance with the directions of" Ferguson, and that Prudential "shall take no action except pursuant to directions received by it from [Ferguson], and shall have no duty to determine any facts or the propriety of any action taken or omitted by it in good faith pursuant to instructions from [Ferguson]."
>
> - Prudential also entered into Group Annuity Contracts ("GACs") with the Plan to establish the "Separate Accounts," independent investment options offered by the service provider that pool and reinvest assets from multiple plans. See, e.g., Leimkuehler v. Am. United Life Ins. Co., 713 F.3d 905, 908-09 (7th Cir. 2013). Ferguson selects the Separate Accounts it will make available to the Plan, but under the Separate Account E Rider, Prudential has the power and sole discretion to "invest [Separate Account] assets in any investment that [it] deems to be permissible under applicable law."

Richard Rosen is a former employee of Ferguson who participates in the Plan. He alleges that Prudential engaged in prohibited transactions and breached its fiduciary duties in violation of the Employee Retirement Investment Savings Act ("ERISA"), 29 U.S.C. § 1104(a), by receiving revenue-sharing payments from certain investment options. Prudential moved to dismiss the complaint on the ground that it was not acting in an ERISA fiduciary capacity when it received any such payments. See 29 U.S.C. § 1002(21)(A) (defining "fiduciary"). In granting the motion, the district court ruled that while Prudential may qualify as a fiduciary with respect to the Separate Accounts, Rosen failed to adequately plead a breach of fiduciary duty in his Amended Complaint.

We review *de novo* the grant of a motion to dismiss. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). In doing so "we accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Id. We "may affirm on any basis for which there is sufficient support in

the record, including grounds not relied on by the district court." Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., 753 F.3d 395, 413 (2d Cir. 2014)(internal quotation marks omitted).

The "threshold question" in every case alleging breach of fiduciary duty is whether the service provider "was acting as a fiduciary . . . when taking the action subject to [the] complaint." Pegram v. Herdrich, 530 U.S. 211, 226 (2000). "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or ... (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i),(iii). "Subsection one imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted"; "[s]ubsection three describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised." Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 63 (2d Cir. 2006)(internal quotation marks omitted); Frommert v. Conkright, 433 F.3d 254, 271 (2d Cir. 2006) (an entity is an ERISA fiduciary only to the extent that it "exercises ... or has discretionary authority" over a plan's management or administration).

The ERISA definition is "functional," so we look to the actual discretionary authority held by the purported fiduciary rather than its particular label or title. LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997). In the context of ERISA service providers, fiduciary status attaches to the party empowered to make unilateral changes to the investment menu by its contractual arrangement with the plan. See Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co., 961 F. Supp. 2d 393, 397-400 (D. Conn. 2013). The initial, pre-contractual design of the investment menu is not considered discretionary authority with respect to a plan under ERISA. See F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1259 (2d Cir. 1987); Pegram, 530 U.S. at 225-26.

Prudential is considered a fiduciary only to the extent that it exercises or possesses discretionary authority in relation to a plan. Pegram, 530 U.S. at 225. Prudential may therefore act in a fiduciary capacity with respect to certain aspects of the plan and not others.

**The Trust.** Prudential is not a fiduciary in its role as directed trustee of the Trust assets. That agreement specifically withholds from Prudential the sort of discretionary responsibilities that create fiduciary status under Section 1002(21)(A). See J. App'x at 22 (directing Prudential to "take no action except pursuant to directions received by it from" Ferguson); id. at 23 (Prudential "shall have no duty or responsibility to determine the appropriateness of any plan investment, or to cause such investments to be changed"). The employer, Ferguson, retains final contractual authority over any changes to the funds available to the Trust. See Zang v. Paychex, Inc., 728 F. Supp. 2d 261, 271 (W.D.N.Y. 2010) (service provider not a fiduciary because contract gave employer final say and veto over changes to fund allocation). Prudential does not exercise or possess discretionary authority when it makes or changes investments pursuant to Ferguson's instructions. Id. at 269. Nor does Prudential's legal title to Trust assets or its managerial ownership of them create the independent discretion that is the touchstone of an ERISA fiduciary analysis. See Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 18 (1st Cir. 1998) ("mere exercise of physical control generally ... is insufficient to confer fiduciary status").

**The Separate Accounts.** By contrast, Prudential possesses at least some discretionary authority over investments made in the Separate Accounts. See JA-139 ("[Prudential] will invest and reinvest Separate Account E assets at its sole discretion"); 29 U.S.C. § 1002(21)(A)(iii). Prudential argues that it did not receive revenue-sharing payments from any Separate Account investments, and therefore could not have been "acting as a fiduciary . . . when taking the action subject to [the] complaint." Pegram, 530 U.S. at 226; see also McCaffree Fin. Corp. v. Principal Life Ins. Co., 65 F. Supp. 3d 653, 676 (S.D. Iowa 2014)(declining to find service provider a fiduciary despite possession of discretionary authority because alleged excessive fees did not arise out of administration of separate accounts). However, district court opinions in our circuit have held that the mere possession of the discretion to make substantive changes to investments within an account, even if such discretion is never exercised, can transform Prudential into a fiduciary with respect to those specific accounts. See Healthcare Strategies, 961 F. Supp. 2d at 397, 399-400; Haddock v.

Nationwide Fin. Servs., Inc., 262 F.R.D. 97, 122-25 (D. Conn. 2009); Bouboulis, 442 F.3d at 63-65.[1]

In any event, the Amended Complaint fails because it does not allege a breach with respect to the Separate Accounts.  In order to survive a motion to dismiss, Rosen must plausibly allege that Prudential engaged in conduct constituting a breach of an ERISA fiduciary duty while acting within its capacity as plan fiduciary.  29 U.S.C. § 1104(a); Gearren v. The McGraw-Hill Comp., Inc., 660 F.3d 605 (2d Cir. 2011)(per curiam).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and "mere conclusory statements" do not suffice.  Id.

The  prohibited transactions alleged in the Amended Complaint are the receipt of consideration in the form of revenue-sharing payments.  Fee-sharing arrangements between service providers and third party managers "do not in-and-of-themselves create a violation" of ERISA.  Skin Pathology Assocs., Inc. v. Morgan Stanley & Co., Inc., 27 F. Supp. 3d 371, 378 (S.D.N.Y. 2014).  The Amended Complaint rehearses the statutory definitions of prohibited transactions and attaches them to allegations of unlawful revenue-sharing, but such "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009)(internal quotation marks omitted). Rosen does not allege that Prudential received payments from the Separate Accounts without Ferguson's consent or knowledge, and does not distinguish between ordinary compensation for services in the form of revenue-sharing payments and illicit kickbacks.

---

[1] We recognize that cases in other circuits cited by Prudential imposed additional requirements for fiduciary status, but we are not bound by their decisions.  See Leimkuehler, 713 F.3d at 913; Santomenno ex rel John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284 (3d Cir. 2014)(plaintiff must establish a "nexus" between the alleged basis for fiduciary responsibility and the wrongdoing alleged in the complaint); McCaffree Fin. Corp., 65 F. Supp. 3d 653.

Rosen's allegations of a breach of the duties of prudence and loyalty fare no better under our pleading standard. Rosen adduces no facts to show that a prudent fiduciary would have acted differently in managing the Separate Accounts. Amgen, Inc. v. Harris, 136 S. Ct. 758, 759-60 (2016). He alleges that Prudential may hold a financial interest adverse to plan participants when it agrees to receive indirect payments from fund managers. But such an arrangement, when disclosed and agreed upon by the employer, is not per se improper. See Healthcare Strategies, 961 F. Supp. 2d at 399; Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co., 302 F.3d 18, 28-29 (2d Cir. 2002) (a service provider who adheres to the agreed-upon terms of an employee retirement plan is not bound to deviate from those terms against its own interests simply because doing so could result in more gains to plan participants). Even assuming Prudential could have been paid less, an allegation that a service provider failed to offer a lower fee investment option does not plausibly state a claim for breach of the duty of prudence. Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009); Tibble v. Edison Int'l, 729 F.3d 1110, 1135 (9th Cir. 2013).

Lastly, the Amended Complaint does not identify any breaches of Prudential's duty of loyalty. It alleges that Prudential did not act "for the exclusive purpose of" providing benefits to participants. J. App'x at 62. But this theory simply tweaks Rosen's other claims to sound in disloyalty; to allege Prudential receives a benefit is the same as to suggest it maintains financial incentives separate from plan participants. These recycled allegations cannot meet our pleading standard, which demands that to "state a loyalty-based claim under [ERISA], a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts". Sacerdote v. NYU, No. 16-cv-6284 (KBF), 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017). Most importantly, the loyalty-based allegations that the revenue-sharing payments were "fraudulently and deceptively concealed" are contradicted by documents incorporated into the Amended Complaint. J. App'x at 54-55. Rosen's protests that the disclosures were convoluted or unclear are not legally cognizable arguments. See Brown v. Owens Corning Inv. Review Comm., 622 F.3d 564, 571 (6th Cir. 2010)("Actual knowledge does not require proof that the individual Plaintiffs actually saw or read the documents that disclosed the allegedly harmful investments")(internal citations omitted).

7

For the foregoing reasons, and finding no merit in Rosen's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

8